# Richmond

## DAVIS v. COMMONWEALTH OF VIRGINIA.

November 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*R. L. Jordan* and *William H. Colhoun,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

Browning, J., delivered the opinion of the court.

Aldora Davis was indicted under the maiming statute (Code 1919, section 4402) for malicious assault upon a child, Geneva Bishop, whom she had taken into her home to rear and care for. There were four counts charging, respectively, stabbing, cutting, wounding and striking and beating with a stick and weapons and instruments to the grand jurors unknown. It is conceded by both parties to

the action that the testimony of the child, who was eight years old, is indispensable to the conviction of the accused. The jury found the accused guilty and fixed her punishment at three years in the penitentiary, which was confirmed by the judgment of the court.

The capacity of the child to testify is strongly attacked by the accused and the ruling of the court that she was a competent witness is made the basis of an assignment of error. The leading Virginia case on this subject is that of *Rogers* v. *Commonwealth,* 132 Va. 771, 111 S. E. 231, in which it was said:

"There is no fixed age at which a child must have arrived in order to be competent as a witness. Of course, no one would think of calling a child two or three years of age as a witness in a case, but the whole question of competency must be left largely to the discretion of the trial court, and its judgment will not be reversed except for manifest error. He has the opportunity of seeing the child and its demeanor on the stand, which cannot be photographed in the record, and unless what is in the record clearly shows that he has committed error, his action will not be reversed. The child may be too young to be convicted of perjury, but this is not decisive of its competency as a witness. *Commonwealth* v. *Robinson,* 165 Mass. 426, 43 N. E. 121."

In the above case is cited the case of *Wheeler* v. *U. S.,* 159 U. S. 523, 16 S. Ct. 93, 40 L. Ed. 244, and this excerpt is quoted: "While no one would think of calling as a witness an infant only two or three years old, there is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former. The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence, as well as his understanding of

the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review unless from that which is preserved it is clear that it was erroneous."

In *Uthermohlen* v. *Bogg's Run Co.,* 50 W. Va. 468, 40 S. E. 410, 415, 55 L. R. A. 911, 88 Am. St. Rep. 884, it was said: "We cannot judge of the real character or degree of intelligence of these witnesses from their mere paper evidence. The judge of the circuit court had a means of decision in this matter not possessed by us, their presence face to face before him affording him a superior means to judge, of which we are deprived. In almost every case, that is the deciding test. In a great majority of cases the decision of the trial court in the matter of the competency of a child, depending as it does not on age, but on intelligence, must be final, and it must be a very flagrant case of error to authorize this court to reverse the judgment."

The child in this case was examined on its *voir dire* to test its competency, and, among other questions, the following were asked and answered:

"Q. Did they teach you at Sunday school what it was to tell the truth?

"A. They told me not to tell a story.

"Q. What did they tell you would happen if you did tell a story?

"A. That the bad man would get me.

"Q. Who is the bad man?

"A. The devil."

On cross-examination on her *voir dire,* she testified as follows:

"Q. Do you know what an oath is?

"A. No, sir.

'Q. Do you know what the truth is?

"A. No, sir.

"Q. Do you know what a story is?

"A. Yes, sir; a lie.

"Q. What is a lie?

"A. I don't know."

If her answers to these latter questions had been in the affirmative the natural sequence of questions would have been, what is an oath, what is the truth, what is a lie?' Doubtless, she intuitively felt that she would be subjected to this. It would be remarkable to find a child of such tender years and so little scholastic preparation as to be able to employ sufficient reason to define these elements. One somewhat versed in the philosophy of thought might not, without difficulty, pass safely through the ordeal.

The judge of the trial court was face to face with the witness. He had a means of judging the character and degree of intelligence of the witness which we do not possess and we cannot say that his decision presents a case of manifest error. The question of her competency is not entirely clear, but we think that the doubt should be resolved in favor of the decision of the court.

What we have said with reference to the competency of this witness is equally applicable to the witness, Owen Weams.

The remaining assignments of error with which it is necessary for us to concern ourselves are predicated upon alleged error of the court in its rulings upon the instructions.

It becomes necessary to make some observations with reference to the provisions of Rule 22 of this court for the reason that the validity of the assignments of error relating to the instructions is brought in question by the Commonwealth. It is urged that the requirement of the rule that when instructions are made the subject of legal objection, the grounds of such objection shall be stated with reasonable certainty, was not complied with. Obviously the reason for this provision is to acquaint the judge, whose ruling is sought, with the precise legal questions invoked, that his judgment may be advantaged by such enlightenment. Where the vices urged to the instructions are perfectly patent and there can be no doubt of the meaning of the instructions as related to the evidence it would appear to be needless to assign them in

order to observe a meticulous adherence to the rule. The instructions, in review, disclose with reasonable certainty the grounds of objection of the defense. They inhere in the instructions. There need be no effort to make the obvious more so.

We think the objections to the assignments of error we are discussing are without merit.

■ Instruction No. 1 as presented charged the jury that in order to convict the accused they must believe that the accused made an assault on the child with a stick with a nail in it. This was the theory of the Commonwealth's case. The burden of the child's testimony revolved around this accusation and the defendant was entitled to have the jury charged as contended for. The refusal of the instruction was prejudicial error.

■ Instruction No. 6 should have been given. There was substantial evidence warranting it. Instruction No. 6A, as amended, was inartificially drawn in that the blows described therein were not limited to blows inflicted by the accused and might well have misled the jury.

Instruction No. 4 correctly expresses the law as has been held by this court and should have been given.

For the errors pointed out and discussed we reverse the judgment of the trial court and remand the case to be again tried, if the Commonwealth be so advised, in conformity with the views herein expressed.

*Reversed and remanded.*