# Richmond

## MILTON LEE CORTNER

## V.

## COMMONWEALTH OF VIRGINIA

September 11, 1981.

Record No. 801830.

Present: All the Justices.

L. *Richard Padgett, Jr.,* for appellant.
*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

Milton Lee Cortner was found guilty by a jury on charges of robbery of Ronnie W. Harvey, robbery of Donald Scott, abduction of Scott A. Mitchell for pecuniary benefit, and use of a firearm in the commission of a felony. The trial court entered final judgment on the verdicts on August 14, 1980, and following the jury's recommendation, fixed punishment at life imprisonment for the robbery of Harvey, twenty years for the robbery of Scott, life imprisonment for the abduction of Mitchell for pecuniary benefit, and one year for the use of a firearm in the commission of a felony.

In this appeal we consider (1) whether the defendant is guilty of abduction for pecuniary benefit within Code § 18.2-48 and (2) whether he can be guilty of the use of a firearm in the commission of a felony in violation of Code § 18.2-53.1 when he did not actually possess or use the firearm.

On April 30, 1980, at approximately 10:00 a.m., Cortner, accompanied by Thomas Chears, arrived at the Medicine Shop Pharmacy in Vinton. Present in the store at the time were the pharmacist, Ronald Harvey, and a customer, Scott Mitchell.

At trial Harvey testified that, while talking with Mitchell, he noticed a car backing into a parking space in front of the pharmacy. This was unusual, Harvey testified, because "I've been there almost three years and I have never seen anybody back into the spaces." Harvey recognized one of the occupants of the car as being a black man, later identified as Chears, who had come into the pharmacy several days before asking for chewing gum. Harvey testified that, as Chears and Cortner emerged from the automobile and moved towards the pharmacy, he instinctively "knew what was coming down . . . so [he] went ahead and pushed the silent alarm."

Mitchell testified that as he approached the front door to leave "two black men come to the door and closed it in front of me . . . and then one of them grabbed me by the arm and pulled a gun and told me to go to the counter."

When the two robbers and Mitchell reached the counter, Chears pointed the gun at Harvey, demanding all the cash in the register. After Harvey opened the cash register, Chears ordered both Harvey and Mitchell to lie on the floor behind the counter.

Shortly thereafter, a deliveryman, Donald Scott, walked into the pharmacy. He testified that when he first arrived he didn't see anyone, but then "this black man stood up from behind the counter and said 'this guy's on the floor . . . don't move.'" The robbers directed Scott to lie beside Harvey and Mitchell.

All three witnesses testified that Chears alone held the .357 Magnum revolver on everyone, but both Cortner and Chears removed money from the cash register and from the wallets of Harvey and Scott. They also forced Harvey to surrender various drugs in the pharmacy.

Meanwhile, the police, responding to the silent alarm, surrounded the pharmacy. When the two robbers unsuccessfully tried to leave by the front door, and then by a window, the police shouted warnings to halt. Cortner grabbed Mitchell by the belt while Chears held his gun to Mitchell's head. The robbers exited through the front door, using Mitchell as a shield and threatening to "blow him away" if they were not allowed to leave. They forced Mitchell into the front seat of the car between them. Cortner drove while Chears held the gun. As soon as the car pulled away from the pharmacy, Chears fired twice at the police who returned the fire, shooting out one of the tires on the get-away vehicle. Cortner and Chears abandoned the vehicle approximately two

miles from the scene of the robbery, freeing Mitchell simultane-
ously. The police apprehended the two suspects soon thereafter,
recovering a number of items taken in the robbery.

## I. *Was Abduction for Pecuniary Benefit?*

Cortner was convicted of abduction for pecuniary benefit under
Code § 18.2-48, which states in pertinent part: "Abduction with
the intent to extort money, or pecuniary benefit . . . shall be a
Class 2 felony." A Class 2 felony carries a penalty of imprison-
ment for life or for any term not less than twenty years. Code §
18.2-10. Cortner tendered to the jury, and the court refused, his
instruction pertaining to abduction and kidnapping derived from
Code § 18.2-47.[1] Code § 18.2-47 is a less severe charge of abduc-
tion and kidnapping, calling for Class 5 felony punishment of im-
prisonment for not less than one year nor more than ten years or
confinement in jail for not more than twelve months and a fine of
not more than $1,000, either or both. Code § 18.2-10.

Cortner argues on appeal that there was absolutely no evi-
dence presented at trial to show that there was any intention or
plan to take a hostage for the purpose of gaining any kind of ben-
efit, but only as a means of escape, and that there was no "pecuni-
ary benefit" as contemplated in Code § 18.2-48. We disagree.

The statutory language "with the intent to extort money, or pe-
cuniary benefit" has been with us for many years.[2] We first con-
strued the language in *Kent* v. *Commonwealth,* 165 Va. 840, 183
S.E. 177 (1936). In that case the defendant contended he could
not be convicted because the evidence failed to show any intent on
his part to extort money or pecuniary benefit. There we said:

> The evidence shows that Mrs. Hastings was pressing the
> accused for the payment of money he owed her, and she was
> induced to accompany him to Washington on the occasion

---

[1] Code § 18.2-47. *Abduction and kidnapping defined; punishment.* — Any person, who,
by force, intimidation or deception, and without legal justification or excuse, seizes, takes,
transports, detains or secretes the person of another, with the intent to deprive such other
person of his personal liberty or to withhold or conceal him from any person . . . shall be
deemed guilty of "abduction"; . . . . The terms "abduction" and "kidnapping" shall be
synonymous in this Code.

Abduction for which no punishment is otherwise prescribed shall be punished as a Class
5 felony . . . .

[2] *See* Code § 3676 (1887) and Acts 1902-3-4, c. 598, § 3676, at 948.

referred to upon the assurance that if she would do so he would obtain the money from a relative living there and pay her. The evidence also plainly shows that accused expected to obtain the possession of Blue Ridge Springs and otherwise benefit financially, if he could get Mrs. Hastings out of the way. That she was murdered soon after leaving Blue Ridge Springs in company with accused is beyond question.

After careful consideration of the record, we think the evidence shows that the accused took Mrs. Hastings with him under such circumstances as amount to fraud and coercion on his part, and for the purpose of pecuniary benefit, and the same is, therefore, sufficient to sustain a conviction under the statute.

165 Va. at 841-42, 183 S.E. at 177-78.

Some years later, this holding was reaffirmed in *Krummert v. Commonwealth,* 186 Va. 581, 584, 43 S.E.2d 831, 832-33 (1947), where we said:

> Intent to extort some "pecuniary benefit" is also enough. The appellant makes but one claim, and that is that he received no pecuniary benefit; in short, that no money passed or was demanded.
>
> "By 'pecuniary benefits' is meant not only money, but everything that can be valued in money, . . ." [Citations omitted.]
>
> . . . .
>
> In this case this defendant sought free transportation to Washington. It costs money to ride from Richmond to Washington by public conveyance. Moreover, he took over Abernathy's automobile.

We agree with the trial court's decision refusing Cortner's motion to strike the evidence on the abduction charge for pecuniary benefit. By using Mitchell as a shield and by threatening to "blow him away," Cortner and Chears safely left the scene of the robbery with the stolen money and drugs. Thus, they acted with intent to extort or acquire pecuniary benefit for themselves.

■ Tangentially, the defendant contends that the jury should have considered the lesser charge implied in Code § 18.2-47, and to that end he tendered Instruction No. D-1.[3] The trial court correctly refused that instruction because there was no evidence to support the lesser charge. *See Hatcher* v. *Commonwealth,* 218 Va. 811, 814, 214 S.E.2d 756, 758 (1978), and *Wooden* v. *Commonwealth,* 208 Va. 629, 159 S.E.2d 623 (1968). Further, the tendered instruction was not properly framed because it totally ignored the possible finding of guilt under Code § 18.2-48.

We therefore hold that the kidnapping of the hostage, Scott Mitchell, under the circumstances of this case was for pecuniary benefit within the meaning of Code § 18.2-48.

## II. *Use of a Firearm in Commission of a Felony.*

■ Cortner contends that because he never actually held the gun used in the robbery he should not have been convicted of using a firearm in the commission of a felony. Because the evidence proved that Chears had possession of the gun at all times, Cortner argues that he could not properly be convicted under Code § 18.2-53.1 and that the trial court erred when it refused his motion to strike the evidence in support thereof. The Commonwealth argues that it was not required to prove that Cortner "actually held the gun" to establish his guilt under Code § 18.2-53.1.

Code § 18.2-53.1 makes it unlawful for "any person to use . . . any pistol, shotgun, rifle, or other firearm or display such weapon

---

[3] Instruction No. D-1, offered by the defendant and refused by the court, stated:

"The defendant is charged with the crime of abduction. Kidnapping and abduction are the same crime. The Commonwealth must prove beyond a reasonable doubt each of the following elements of the crime:

(1) That the defendant by force did seize Scott Mitchell; and

(2) That the defendant did so with the intent of depriving Scott Mitchell of his personal liberty; and,

(3) That the defendant acted without legal justification or excuse.

If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty and fix his punishment at:

(1) A term of imprisonment of not less than one (1) nor more than ten (10) years; or,

(2) Confinement in jail for not more than twelve (12) months; or,

(3) A fine of not more than $1,00.00; or,

(4) Confinement of jail for not more than twelve (12) months and a fine of not more than $1,000.00.

If you find the Commonwealth has failed to prove any one or more of the elements beyond a reasonable doubt, then you shall find the defendant not guilty."

in a threatening manner while committing . . . abduction." Code § 18.2-18 permits in the case "of *every* felony, *every* principal in the second degree" to be tried and convicted as if he were a principal in the first degree. (Emphasis added.) The capital murder statute contains one express limitation upon this legislative dictate. Code § 18.2-18 does not permit a principal in the second degree to be convicted of capital murder. *See Johnson v. Commonwealth,* 220 Va. 146, 255 S.E.2d 525 (1979).

Although Cortner never actually possessed the gun used in the robberies, he acted in concert with Chears, who did display the weapon. With the use of the gun, Cortner and Chears robbed both Harvey and Scott and abducted Mitchell. Thus, Cortner effectively "used" the revolver and was thereby subject to the terms of Code § 18.2-53.1. Accordingly, the trial court did not err in its refusal to strike the evidence.

In view of the foregoing facts and circumstances, the judgment of the lower court will be

*Affirmed.*