## Richmond

### CARLISH JUNNIE MARTIN

v.

### COMMONWEALTH OF VIRGINIA

No. 1707-89-2

Decided January 21, 1992

Counsel

Russell C. Williams (David J. Johnson, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## ON REHEARING EN BANC

Opinion

BENTON, J.—Carlish Junnie Martin appeals the trial judge's refusal to instruct the jury on the elements of simple assault at his trial for attempted capital murder. In a memorandum opinion, a panel of this court concluded that the trial judge did not err. *Martin v. Commonwealth*, No. 1707-89-2 (Va. App. July 9, 1991). A dissenting opinion was filed to the panel decision. Pursuant to Code § 17-116.02(D), the Court convened *en banc* to consider the question presented. For the reasons that follow, we reverse the conviction and remand for a new trial.

## I.

Although the Commonwealth prevailed at trial, the appropriate standard of review requires that we view the evidence pertinent to Martin's refused instruction in the light most favorable to Martin. *Blondel v. Hays*, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991). When the evidence is so viewed, it established that several police officers responded at midnight to an alert of a possible burglary in a residential neighborhood in the City of Richmond. When a homeowner spied a man in his yard and shouted, the officers saw a man wearing blue jeans, a t-shirt, and a baseball cap fleeing through backyards.

Detective Paul Kiniry, who was dressed in plain clothes and driving approximately a block from the scene, saw Martin run, then walk toward him. Martin was wearing dark pants, a t-shirt, and a baseball cap. Kiniry exited his vehicle, identified himself as a police officer and ordered Martin to stop. Kiniry was in the process of frisking Martin for weapons when he felt a bulge in Martin's back hip pocket. When Kiniry advised Martin that he was under arrest, Martin hit him with his elbow and fled.

Kiniry chased Martin on foot and followed Martin around a white van parked by a street curb. After their second circuit around the van, Kiniry found Martin standing on the curb with a large knife in his hand. Swinging the knife at Kiniry, Martin said, "Come on, get some of this shit. I'm going to kill you." The knife passed immediately under Kiniry's chin. Eluding the first swing of the knife, Kiniry fell backward against the van. As Martin swung a second time, Kiniry was trying to pull his gun from his holster. At that time, Martin was "two to three feet" from Kiniry. Kiniry could not recall whether Martin stepped toward him when he swung the second time. Before Kiniry could release his gun from its holster, Martin fled again. As a consequence of the incident at the van, Martin "got a couple of steps lead" on Kiniry. Kiniry pursued Martin into a fenced-in area; however, Martin jumped over the fence. Martin was apprehended by another officer in the vicinity.

At the conclusion of the evidence, Martin's counsel tendered an instruction to inform the jury that assault is a lesser-included offense of attempted capital murder, thereby giving the jury the option of convicting Martin of the lesser offense. The trial judge re-

fused the instruction and instructed the jury as to only the offenses of unlawful entry, Code § 18.2-119, and attempted capital murder. Code §§ 18.2-25 and 18.2-31(f)(now Code § 18.2-31(6)). After deliberating an entire day, the jury acquitted Martin of unlawful entry, found Martin guilty of attempted capital murder, and fixed his punishment at twenty years, the statutory minimum. Martin's counsel made a motion for a new trial on the ground that the instruction should have been given. The trial judge denied the motion.

## II.

A charge of attempted capital murder requires proof of "both a specific intent to kill the victim and an overt but ineffectual act committed in furtherance of the criminal purpose." *Wynn v. Commonwealth*, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987). Criminal assault, however, is "any attempt or offer with force or violence to do corporal hurt to another." *Jones v. Commonwealth*, 184 Va. 679, 681, 36 S.E.2d 571, 572 (1946). It is a lesser included offense of attempted murder. *See Wynn*, 5 Va. App. at 292, 362 S.E.2d at 198.

The Commonwealth argues that because "there is no factual dispute," the trial judge did not err in refusing the instruction. We disagree with the premise that a factual dispute did not exist. The disputed factual element in this case was the intent to kill. Although Martin's words and actions were not disputed, his mental state was very much at issue. "The intent required to be proven in an attempted crime is the specific intent in the person's mind." *Wynn*, 5 Va. App. at 292, 362 S.E.2d at 198. The specific intent in the person's mind may, and often must, be inferred from that person's conduct and statements. *Hargrave v. Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974).

The Commonwealth sought to have the jury infer the element of intent to kill from Martin's words and actions. The evidence, however, is also reasonably susceptible to the interpretation that Martin's words and feints with the knife were intended to intimidate and immobilize Kiniry in order to enable Martin to escape. Martin was fleeing from Kiniry when Martin stopped circling the van and again encountered Kiniry. The jury was entitled to infer from the evidence that because Martin disengaged from the confrontation and resumed his flight, Martin intended only to scare

the officer into discontinuing the chase. *See Wynn*, 5 Va. App. at 288-92, 362 S.E.2d at 196-99 (jury could have believed that an accused who shot three times at an officer from a distance of four feet intended only to scare the officer). Kiniry's testimony that Martin stood his ground and did not advance with the knife when Kiniry fell back against the van is additional evidence of conduct that would tend to negate an intent to kill. "It is immaterial that the jury could have reached contrary conclusions." *McClung v. Commonwealth*, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

The inferences that flow from the facts do not solely favor the Commonwealth's theory of the case. It is fundamental that:

> [t]he jury is not required to accept, *in toto*, either the theory of the Commonwealth or that of an accused. They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

*Belton v. Commonwealth*, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). Consequently, "[i]f a proffered instruction finds any support in credible evidence, its refusal is reversible error." *McClung*, 215 Va. at 657, 212 S.E.2d at 293.

In a recent case, this Court specifically addressed "whether [a] jury was required to find a disputed factual element" in the absence of conflicting evidence. *Bellfield v. Commonwealth*, 11 Va. App. 310, 314, 398 S.E.2d 90, 93 (1990). In resolving that question, we relied upon a decision of the United States Supreme Court holding that " '[a] lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.' " *Id.* at 314, 398 S.E.2d at 92 (quoting *Sansone v. United States*, 380 U.S. 343, 350 (1965)). We did not then, and we do not now, interpret the *Sansone* language

> to mean that a lesser included offense instruction is proper only when there is conflicting testimony as to a factual element. Rather, we read *Sansone* to hold that a lesser included offense instruction is required so long as a factual element must be proved. This reading is consistent with Virginia deci-

sions rendered subsequent to *Sansone*, which require a lesser included offense instruction as long as there is credible evidence to support such an instruction.

*Id.* at 314-15, 398 S.E.2d at 93.

Conceptually, the *Bellfield* ruling rests upon the most fundamental axiom of criminal law — that the prosecution is burdened with proving beyond a reasonable doubt each and every constituent element of a crime before an accused may stand convicted of that particular offense. *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). The accused's not guilty plea disputes the criminal allegations and puts the Commonwealth to its task. Thus, the Commonwealth's failure to prove just one element will result necessarily in an acquittal of the charged offense and either a finding of guilt of a lesser-included offense or a finding of not guilty. The principles *Bellfield* espouses apply directly to the case at hand.

■ The jury was instructed that the Commonwealth had the burden of proving beyond a reasonable doubt "[t]hat the defendant intended to kill . . . Kiniry." The jury was also instructed that "[i]n determining whether the intent has been proved, you *may* consider the conduct of the person involved and *all* the circumstance revealed by the evidence" (emphasis added). The jury was not instructed, however, that if intent to kill was not proved, Martin could be found guilty of a lesser offense. "A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). Here, the jury was given the impermissible choice of drawing the conclusion that Martin either intended to kill Kiniry and was guilty of the charged offense or that Martin did not intend to kill him and was not guilty of any offense. The evidence permitted the jury to draw an inference of intent to assault so as to effect an escape. The jury should have been so instructed.

III.

Although the record proves that Martin tendered an instruction for simple assault which the trial judge refused, the Commonwealth asserts that Martin has not sufficiently preserved this issue for appeal and is, therefore, procedurally barred under Rule 5A:18 from bringing it to this Court. We disagree.

As discussed above, the record clearly indicates that there was evidence allowing the jury to form a permissible inference that Martin lacked the necessary intent to commit attempted capital murder. Martin offered a proper instruction consistent with this lack of intent which outlined the lesser included offense of simple assault. The record states that "the court and counsel considered instructions to which there were no objections or exceptions" after which the trial judge refused the instruction on simple assault.

■ The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials. *Campbell v. Commonwealth*, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991)(en banc). By tendering the assault instruction, Martin fully alerted the trial judge and the Commonwealth that simple assault is a lesser-included offense of attempted capital murder and sufficient evidence supported granting the instruction. At this point in the proceedings, the trial judge had an affirmative duty to include the instruction. *See Jimenez v. Commonwealth*, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). Nonetheless, the trial judge refused the instruction. Requiring Martin to "object" after this refusal would, in effect, recreate the requirement of noting an exception to a final adverse ruling of the trial judge. As we stated in *Martinez v. Commonwealth*, 10 Va. App. 664, 668, 395 S.E.2d 467, 470 (1990), *aff'd as modified*, 241 Va. 557, 403 S.E.2d 358 (1991), "the requirement for an exception [has been] eliminated."

■ The Commonwealth relies upon the holdings of *Harlow v. Commonwealth*, 195 Va. 269, 77 S.E.2d 851 (1953), and *Smith v. Commonwealth*, 165 Va. 776, 182 S.E. 124 (1935), in support of its position. These cases are distinguishable from the case at hand. In *Harlow*, the alleged error involved the trial judge's exercise of discretion in choosing an instruction provided by the Commonwealth over an instruction provided by the defendant. 195 Va. at 273, 77 S.E.2d at 854. Unlike *Harlow*, we need not examine the trial judge's exercise of discretion. Because the instruction was proper and instructed the jury on an essential element of Martin's case, the trial judge had an affirmative duty to offer it to the jury. "[W]hen a principle of law is vital to a defendant in a criminal case, the trial court has an affirmative duty properly to instruct the jury about the matter." *Jimenez v. Commonwealth*, 241 Va.

at 250, 402 S.E.2d at 681 (citing *Bryant v. Commonwealth*, 216 Va. 390, 393, 219 S.E.2d 669, 671 (1975)).

*Smith* is also distinguishable from Martin's case. In *Smith*, the "instructions . . . were offered by the defendant and refused by the court to which action of the court the defendants excepted." *Smith*, 165 Va. at 781, 182 S.E. at 126. The defendant alleged that the trial judge erred in refusing the instruction on justifiable homicide after granting the instruction on excusable homicide, a distinction which the Supreme Court characterized as "shadowy." *Id.* at 782, 182 S.E. at 127. The Court ruled the appeal procedurally barred because the excusable homicide instruction "substantially sets out Smith's claim," *id.* at 785, 182 S.E. at 128, and thus, Smith had failed to state the grounds of his objection with reasonable certainty. However, the Court then qualified its holding by stating, "[o]f course this rule should not be applied where the character of the objection is perfectly patent." *Id.* at 781, 182 S.E. at 127 (citing *Davis v. Commonwealth*, 161 Va. 1037, 1041-42, 171 S.E. 598, 599 (1933)). Since we have determined that Martin's counsel made an unambiguous request for an assault instruction based upon the evidence, the objection was patent. Martin's objection that the jury was not instructed as to an essential element was preserved. Thus, *Smith* is distinguishable from the case at hand.

For these reasons, we hold that the issue was preserved for appeal, and we need not discuss whether the arguments made to the trial judge at the hearing on Martin's motion for a new trial for failure to give the instruction sufficed to preserve the issue. Accordingly, the judgment is reversed and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., Barrow, J., Bray, J., Coleman, J., Elder, J., Moon, J., and Willis, J., concurred.

Duff, J., with whom Baker, J., joins, dissenting.

I would affirm the conviction of attempted capital murder for two reasons: First, on the record before us I find no conflict in the evidence on any essential element of the crime charged. Thus, the requested instruction on simple assault was properly denied. Second, the record does not show that the defendant presented the

trial court with the same argument he advances on appeal. Thus, he has not preserved the issue for appellate consideration.

The majority asserts that the evidence is "reasonably susceptible to the interpretation that Martin's words and feints with the knife were intended to intimidate and immobilize Kiniry in order to enable Martin to escape." I disagree. Martin was fleeing from Kiniry, who did not have his gun drawn. For an unknown reason, Martin stopped his flight and, with knife poised, waited for the officer to come around the van. When Kiniry rounded the corner of the vehicle, Martin said, "Come get some of this shit. I'm going to kill you." At this point, the record shows that Kiniry and Martin were about two feet apart. What the majority characterizes as "feints" with the knife, the record shows to be two swings or swipes at Kiniry's throat, so close that the officer could feel the wind from the blade as it passed him. He testified that he avoided being cut only by bending backward on the van. This testimony stands uncontradicted in the record.

After the first swing at his throat, Kiniry attempted to draw his weapon, but experienced difficulty because his shirt in some manner became tangled with the holster. As the trial court observed, the officer's testimony was equivocal as to whether he had drawn his gun at that time or was still struggling to remove it from its holster. Nevertheless, "the evidence clearly established that it was there for Martin to be aware of, that is that the police officer was making use of his weapon in an effort to protect himself, and at that point Martin elected to flee rather than to continue with the . . . overt but ineffectual act."

One's intent can be determined in two ways: by an actual statement of intent or by reasonable inference from the defendant's acts. Rare is the case where the trier of fact has the luxury of being able to determine intent from a defendant's own words. This, however, is such a case. Before swinging at Kiniry's throat with the knife, Martin stated his intent in these unequivocal words: "I'm going to kill you." He then proceeded to attempt to do just that. Considering that Martin himself stopped his flight in order to confront Kiniry, that he told Kiniry what he intended to do, then took appropriate steps to accomplish his intent, and that he began to flee again only when it was apparent that Kiniry was about to use his weapon, I find it unreasonable and unrealistic to conclude that Martin's intent was anything other than what he

said it was. In short, only a strained reading of this record provides a conflict in the evidence of intent or in the reasonable inferences that could be drawn from the evidence. Thus, no basis in the evidence supported the tendered instruction on assault.

In *Guss v. Commonwealth*, 217 Va. 13, 225 S.E.2d 196 (1976), a case strongly analogous to the case at bar, the Supreme Court upheld the trial court's refusal, on a charge of robbery, to instruct the jury on simple assault. The Court in *Guss* observed, "All the evidence showed that the defendant struck and beat [the victim] and that he took the victim's wallet concomitant with the striking and beating." *Id.* at 15, 225 S.E.2d at 197.

In *Cortner v. Commonwealth*, 222 Va. 557, 281 S.E.2d 908 (1981), where the defendant was charged with abduction for pecuniary benefit, the trial court refused to instruct the jury on simple abduction where the evidence showed that the defendant and his accomplice removed money from a pharmacy cash register, used the victim as a shield to get away from the police, and threatened to "blow him away" if not permitted to leave. The Supreme Court upheld the conviction on the greater charge and stated, "The trial court correctly refused [the lesser] instruction because there was no evidence to support the lesser charge." *Id.* at 562, 281 S.E.2d at 910-11.

The defendant argues that his intent was placed in issue by his not guilty plea. Thus, he contends an assault instruction should have been given. Under this theory, any defendant who pleads not guilty to a charge (thus all defendants in a jury trial) would be entitled to instructions on every lesser-included offense, irrespective of the evidence presented. Such a theory is clearly contrary to Virginia law. Otherwise, the defendants in *Cortner* and *Guss* would have been entitled to lesser-included instructions.

Furthermore, the record before us does show that the argument now presented was not made in the trial court. Pursuant to Rule 5A:18, a defendant must timely object with specificity in order to preserve his claim for appeal. An objection to an instruction was insufficient which stated only, "Defendant objected and excepted to the action in giving instruction No. 2 offered by the Commonwealth, and to the refusal to give instruction F offered by defendant." *Harlow v. Commonwealth*, 195 Va. 269, 273, 77 S.E.2d 851, 854 (1953). The Court held that the trial judge must be in-

formed of the "precise points of objection in the minds of counsel." *Id.*

An appellant has the responsibility to present to the appellate court so much of the record as is necessary for a full consideration of the alleged error. *Justis v. Young,* 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961). In *Woods v. R. D. Hunt & Son, Inc.,* 207 Va. 281, 148 S.E.2d 779 (1966), the Supreme Court observed:

> We have often said that on appeal the judgment of the court below is presumed to be correct and that the onus is upon the appellant to provide us with a sufficient record from which we can decide whether the trial court erred as alleged. A failure to furnish a sufficient record will result in an affirmance of the judgment appealed from.

*Id.* at 287, 148 S.E.2d at 783.

At the conclusion of all of the evidence, the transcript in the record states that the court and counsel "considered instructions to which there are no objections or exceptions." Nothing in the record shows what arguments Martin presented as to why he was entitled to an assault instruction under the evidence. Following the guilty verdict, the record reflects that defense counsel asked the court "to consider granting Mr. Martin a new trial on the basis of the court's failure to offer the jury the assault instruction." The transcript does not contain any argument on the motion at that time. A transcriber's note simply states that argument was had and the motion was denied. Subsequently, the defendant filed a written motion to set aside the verdict. The record contains the full argument made on that motion on October 31, 1989, eighteen days after trial.

The majority properly concludes that the primary purpose of Rule 5A:18 is to alert the trial judge to possible error so that he or she may consider the matter and take corrective action necessary to avoid unnecessary appeals, reversals and mistrials. Implicit in such a purpose is the requirement that the basis for the action requested be stated *at a time when the judge can take corrective action.* The record does not show that such was done in this case. Certainly the motion made following the guilty verdict was untimely, as the record shows the jury had by then been excused.

Similarly, the argument made eighteen days later, even though accepted by the trial court, was untimely and did not satisfy Rule 5A:18. The court at that time could take no immediate corrective action other than to set aside the verdict and order a new trial, the very actions that Rule 5A:18 was designed to prevent.

I disagree with the majority's assertion that "[b]y tendering the assault instruction, Martin fully alerted the trial judge . . . that simple assault is a lesser included offense . . . and there was sufficient evidence to include it." Offering the instruction was merely Martin's bald assertion that sufficient evidence existed. The tendered instruction said nothing about the basis or reasons in support thereof. The record shows no analysis of the evidence and draws no distinctions from Virginia authorities such as *Cortner* and *Guss*. In short, we do not know the nature or extent of the argument presented, if any. As far as this record shows, the defendant tendered the assault instruction, waited to see the jury's verdict and only presented the full argument now made on appeal some eighteen days thereafter. In my view, this state of the record does not satisfy Rule 5A:18.

For these reasons, I dissent from the majority's view of the case and would affirm the conviction.