COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge Benton and
        Senior Judge Duff
Argued at Alexandria, Virginia


JONATHAN MICHAEL WHITAKER

                                  MEMORANDUM OPINION BY
v.  Record No. 2050-97-4         JUDGE JAMES W. BENTON, JR.
                                       JULY 7, 1998

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                    J. Peyton Farmer, Judge

          Patricia Kelly, Assistant Public Defender,
          for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Jonathan M. Whitaker was tried by a judge and convicted of
breaking and entering with the intent to commit larceny, a
statutory burglary in violation of Code  18.2-91.  Whitaker
contends the evidence was insufficient to prove a "breaking."  We
agree and reverse Whitaker's conviction.
                              I.
     When considering the sufficiency of the evidence on appeal
in a criminal case, this Court views the evidence in the light
most favorable to the Commonwealth, granting to it all reasonable
inferences fairly deducible therefrom.  See Higginbotham v.
Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  So
viewed, the evidence proved that prior to trial, Whitaker pleaded
guilty to grand larceny and possession of a firearm after having
been convicted of a felony.  The larceny was committed in the
house of Whitaker's mother and stepfather, the same residence in
which the burglary was alleged to have occurred.  Following his
plea, Whitaker was tried for burglary in a bench trial with two
codefendants who were charged with multiple offenses involving
property stolen from the house of Whitaker's mother and
stepfather.
     At trial, Whitaker's mother testified that before these
events occurred Whitaker had lived "on and off" in the house.  In
1996, she and her husband, Whitaker's stepfather, had agreed to
allow Whitaker to live in their house provided Whitaker
maintained a job and assisted with household chores.  On or
around October 31, 1996, Whitaker's stepfather told Whitaker to
look for another place to live because Whitaker lost his job.
Although Whitaker never spent a night in the house after that
day, Whitaker retained a set of keys to the house and returned to
the house on occasion.

Whitaker's mother further testified that neither she nor Whitaker's stepfather told Whitaker he was not allowed in the house. Whitaker's mother testified that she had given Whitaker permission to enter the house to take showers, pick up clean clothes, or have a meal. She never asked Whitaker to return his house key and "never told him not to come back in the house."

Around mid-November, Whitaker's mother and stepfather noticed things were missing from the house. Whitaker's mother called the police to report the missing jewelry, camcorder, camera, camping stove, binoculars, router, and two firearms. Whitaker's mother and stepfather then changed the locks on the front door of the house. Whitaker's mother testified that nothing was taken after the locks were changed. She also testified that after she filed the report with the police, Whitaker admitted to her that he took the firearms.

Whitaker's stepfather testified that after he told Whitaker that Whitaker needed to look for another place to live, Whitaker did not "say anything one way or the other." He did not impose a time by which Whitaker had to leave. Although Whitaker did not "come back to spend the night," Whitaker left his clothes and personal items in the house. When asked if "Whitaker had permission to be in [the] house," Whitaker's stepfather testified, "I didn't say he couldn't be there." Whitaker's stepfather further testified that he did not object to Whitaker "coming or going, getting his personal items out of the house" and agreed that Whitaker "had some type of permission to be in there to get his clothes."

Whitaker's stepfather noticed the guns missing in mid-November, several weeks after he told Whitaker to look for another place to live. The police later recovered the missing items from several local pawn shops. In a statement to police, Whitaker admitted that he took two firearms, a camping stove and a router from his parents' house. Whitaker said that he pawned the camping stove and the router and that one of the codefendants, Harris, pawned the guns for him. Whitaker denied taking or pawning his mother's jewelry.

Over Whitaker's objection, the trial judge admitted into evidence a statement made to the police by Whitaker's other codefendant, Vasquez. Vasquez told police that after Whitaker got "kicked out," Vasquez drove Whitaker to the house "almost every day." Vasquez and Harris would sit in Vasquez's car smoking a cigarette while Whitaker went into the house. Whitaker took some rings, a circular saw, firearms and a camcorder. Vasquez stated that he pawned all of the items Whitaker took from the house. Vasquez stated that the "[f]irst few times [Whitaker] used his house key but after the locks were changed [Whitaker] went around to the back of the house and entered, but I'm not certain how."

In his defense, Whitaker testified that he called his mother on several occasions and asked her if he could go into the house to get clothes and take a shower. On the day he took the guns, he used his key to enter the house. In the forty minutes he was in the house, he showered, got some of his clothes, made phone calls, and ate a sandwich. He decided to take the guns when he "was pretty much on [his] way out the door." Whitaker testified that he pawned the camping stove, binoculars, and router before he had the confrontation with his stepfather on October 31. He

denied taking his mother's jewelry.

Harris testified that on occasion he and Vasquez would wait outside the house for Whitaker. However, Harris did not recall if this was before or after Whitaker was asked to leave, and Harris did not know whether Whitaker was stealing anything. Harris recalled that Whitaker had clothes in a backpack when Whitaker came out of the house. Harris testified that he was not present when Whitaker took the firearms from the house and he pawned the firearms for Whitaker as a favor. Harris also admitted to pawning a saw and some jewelry but testified he did not remember where he had obtained these items.

The trial judge found Whitaker guilty of statutory burglary and sentenced Whitaker to serve concurrent sentences of eight years with five years and two months suspended on both the grand larceny and statutory burglary charges. The judge also sentenced Whitaker to a suspended twelve months on the firearms charge.

## II.

In pertinent part, Code 18.2-90 provides as follows:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson in violation of 18.2-77, 18.2-79 or 18.2-80, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

Code 18.2-91 provides that "[i]f any person commits any of the acts mentioned in 18.2-90 with intent to commit larceny, . . . he shall be guilty of statutory burglary." The Commonwealth bears the burden of "proving beyond a reasonable doubt each and every constituent element of a crime before an accused may stand convicted of the particular offense." Martin v. Commonwealth, 13 Va. App. 524, 529, 414 S.E.2d 401, 403 (1992) (en banc); see Jackson v. Virginia, 443 U.S. 307, 315-16 (1979).

The Commonwealth conceded at trial that no evidence proved the time of day Whitaker entered the residence. Therefore, in order to convict Whitaker under Code 18.2-91, the Commonwealth had to prove a breaking and entering with intent to commit larceny. See Code 18.2-90. Whitaker contends that the evidence was insufficient to prove a "breaking."

> Breaking, as an element of the crime of burglary, may be either actual or constructive. There is constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy. . . .
>
> Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this

> element of the crime. . . . But a breaking,
> either actual or constructive, to support a
> conviction of burglary, must have resulted in
> an entrance contrary to the will of the
> occupier of the house.

Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922) (emphasis added).

In Davis, the Supreme Court held that no breaking, either actual or constructive, was proved because the accused had a key to enter the house and had the right to enter the house. Id. at 523, 110 S.E. at 357. The evidence in this case similarly proved that Whitaker had a key to the house and had the right to enter the house. Whitaker's mother testified that when Whitaker called her she gave him permission to enter the house and that Whitaker was never told that he could not enter the house. Whitaker was told to "look" for another place to live but was never asked to return the key. Whitaker's stepfather testified that he did not tell Whitaker that he could not be in the house, that he knew Whitaker still had clothes in the house, and that Whitaker did have permission to enter the house.

The Commonwealth argues, however, that even if Whitaker had permission to enter the house, that permission was limited in scope. Citing Jones v. Commonwealth, 3 Va. App. 295, 349 S.E.2d 414 (1986), and Clark v. Commonwealth, 22 Va. App. 673, 472 S.E.2d 663 (1996), aff'd en banc, 24 Va. App. 253, 481 S.E.2d 495 (1997), the Commonwealth further argues Whitaker exceeded the scope of that permission and committed a constructive breaking by fraud when he took the items from the house.

In Jones, the defendant entered a department store and concealed himself in the store after closing. This Court noted the following:

> Where a store owner invites the public to
> enter his premises he consents for the
> entrant to view his merchandise for the
> limited purpose of purchase, or to otherwise
> engage in a lawful activity thereon. It is
> not the will of the owner that entrance be
> made to defraud or steal from him.

3 Va. App. at 300, 349 S.E.2d at 417. Relying on the statutory language of Code 18.2-90 and 18.2-91, that a person who "enters and conceals himself" with the intent to commit larceny is guilty of statutory burglary, this Court ruled that the defendant's presence on the premises after the close of business "constitutes a form of entry by fraud and deception when the original entry was made with intent to steal." Jones, 3 Va. App. at 300, 349 S.E.2d at 417 (emphasis added).

In Clark, the accused entered a store at nighttime during business hours, asked the counter attendant where the bathroom was located, went into the bathroom, returned to the counter, pulled out an object that appeared to be a gun and robbed the store. The Court ruled that "the statute's language, 'enter[] without breaking,' specifically excludes breaking as an element," and found that the entry was unlawful. 22 Va. App. at 676, 472 S.E.2d at 664.

Jones involved an entry and concealment on the premises, and

Clark involved an entry at nighttime. Neither case involved a breaking under Code 18.2-90. Thus, these cases are not dispositive of the issue presented in this appeal. See Johns v. Commonwealth, 10 Va. App. 283, 288, 392 S.E.2d 487, 490 (1990).

Whitaker's parents obviously did not authorize or invite Whitaker to enter their residence for the purpose of committing larceny. However, we have held that even where the entry is contrary to the will of the occupier of the premises, the requirement of Code 18.2-90 and 18.2-91 that a person "'breaks and enters' . . . is not satisfied by the mere showing that the accused entered the [house] with the intent to commit [larceny] contrary to the will of the occupier of the premises." Johns, 10 Va. App. at 288-89, 392 S.E.2d at 490. The Commonwealth must also prove a breaking.

The evidence, viewed in the light most favorable to the Commonwealth, proves that Whitaker had his own key to the house and kept his clothing in the house. Neither his mother nor his stepfather asked him to return the key or told him that he could not enter the house. When Whitaker entered the house he used his key, and, therefore, "no fraud was necessary to accomplish his entry." Johns, 10 Va. App. at 289, 392 S.E.2d at 490. Thus, there could be no breaking, either actual or constructive. See Davis, 132 Va. at 523, 110 S.E. at 357. See also Clarke v. Commonwealth, 66 Va. (25 Gratt.) 908, 919-20 (1874) (there can be no burglary when "entry was by the voluntary act and consent of the owner or occupier of the house").

Because the Commonwealth's evidence failed to prove beyond a reasonable doubt that a breaking occurred, the evidence was insufficient to support Whitaker's conviction under Code 18.2-91. Accordingly, we reverse Whitaker's burglary conviction and dismiss the indictment.

### III.

Whitaker asks us to remand this case back to the circuit court so the trial judge can reconsider Whitaker's grand larceny sentence under the sentencing guidelines. We decline to do so.

Rule 1:1 provides in pertinent part as follows:

> All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.

"The Rule is clear. After the expiration of 21 days from the entry of a judgment, the court rendering the judgment loses jurisdiction of the case, and, absent a perfected appeal, the judgment is final and conclusive." Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987). Whitaker noted no objection to the larceny sentence when it was entered, did not make a conditional plea, and did not seek a protective appeal. We have no basis upon which to remand for resentencing.

Reversed and dismissed.