UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia

QUINTON N. WASHINGTON, S/K/A
 QUINTIN N. WASHINGTON

v.     Record No. 2023-15-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
MAY 30, 2017

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

Joan J. Burroughs (The Law Office of Joan J. Burroughs, PLC, on
brief), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Quinton N. Washington ("appellant") appeals his convictions of second-degree murder,

in violation of Code § 18.2-32, and use of a firearm during the commission of a felony, in

violation of Code § 18.2-53.1. Following a jury trial in the Circuit Court of the City of

Richmond ("trial court"), appellant was sentenced to twenty-one years' incarceration. On

appeal, appellant contends that the trial court erred in four respects:

> I. The trial court erred by granting the Commonwealth's
> Motion in Limine and thereby disallowing [appellant] to
> present evidence regarding [Marquis] Richardson's
> ["Richardson"] prior bad acts, where such evidence was
> relevant and admissible since it was offered to prove
> whether or not [appellant's] fears of Richardson were
> reasonable.
>
> II. The trial court erred by sustaining the Commonwealth's
> objections to defense counsel's questions of LaDonah
> Johnson ["Johnson"] about whether she had ever seen

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Richardson with a gun or known Richardson to own a gun, where the answers to such questions were relevant since they tended to prove whether or not [appellant's] fears of Richardson were reasonable.

III.     The trial court erred by denying [appellant's] motion to set aside the jury's verdict and finding the evidence sufficient to prove that [appellant] was guilty of second-degree murder, where [appellant] plainly showed that he was acting in self-defense.

IV.     The trial court erred by denying [appellant's] motion to set aside the jury's verdict and finding the evidence sufficient to prove that [appellant] was guilty of second-degree murder where the facts clearly indicated that he acted without malice and aforethought.

For the following reasons, this Court affirms appellant's convictions.

## I. BACKGROUND

### *The offense*

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).

So viewed, the Commonwealth's evidence was that on the evening of October 3, 2013, Johnson had driven to a pharmacy parking lot to meet appellant so that she could transfer physical custody of their son, Q.W., to appellant. Richardson, Johnson's boyfriend, accompanied her and Q.W. While they waited for appellant to arrive, Richardson began smoking a cigarette.

After appellant arrived, Johnson transferred Q.W.'s belongings to appellant's trunk. During this time, appellant exited his vehicle and began yelling at her, "Why the 'f' you got him smoking around my son. Didn't I tell you not to have him smoking around my son[?]" Appellant then walked over to Richardson, who was seated in the front passenger's seat of

Johnson's car, and yelled, "Didn't I ask you not to smoke around my son. . . . Why the 'f' you smoking around my son . . . I told you not to smoke around him. My son just came from the hospital."

Richardson calmly responded to appellant that the smoke was not bothering Q.W. because the windows were down. Appellant replied, "I don't give an 'f' about no 'mf'n' window being down." Appellant then "yanked the door open[]" with such force that the door handle came off, and tried to pull Richardson out of the vehicle. A struggle ensued, and Richardson pushed appellant out of the car. Johnson attempted to insert herself between appellant and Richardson and while her back was toward Richardson, she noticed appellant holding a gun. Johnson screamed, "Stop, no, no, no." A witness, standing approximately fifty feet away, noted that Richardson had a frightened expression as he attempted to "climb away" from appellant to the driver's side of the vehicle.

Appellant pushed Johnson out of his way, stepped closer to the vehicle, and shot Richardson two or three times. Richardson fell back; appellant turned his back on Richardson and walked away, saying "he pulled a gun out on me." After walking twenty or thirty feet, appellant turned around, walked back to Richardson's door, and discharged another "four or five" shots into the vehicle. After this second round of shots, appellant loudly stated, "He pulled out a gun on me first. I was defending my son."

Richardson died as a result of gunshot wounds to his torso and head. Appellant had discharged a total of seven bullets, three of which were lethal, using a semi-automatic pistol that required appellant to pull the trigger before each shot was fired.

*Pretrial motions*

Prior to trial, appellant filed a motion to admit evidence of prior bad acts and gang affiliation/membership "to show [Richardson's] propensity for turbulence and violence." The

Commonwealth responded with a motion *in limine* to preclude the admission of such evidence. The trial court ruled that the evidence was inadmissible, reasoning that Richardson's gang affiliation, without more, was not relevant and that his prior bad acts were not sufficiently "related in time, place, and circumstance" to the factual circumstances at issue.

*Trial*

During trial, Johnson testified that she had not seen Richardson with a gun on the day of the shooting nor on any previous occasion. In response, defense counsel asked Johnson to confirm that her testimony had been that "[she had] never heard of [Richardson] having a firearm." Johnson clarified that her testimony on direct, had been that she had never *seen* Richardson with a gun. The Commonwealth objected, and the trial court sustained the objection "because it was a different question." The trial court suggested defense counsel rephrase the question. Nevertheless, defense counsel continued asking questions premised on the witness' knowledge regarding Richardson having a gun. The trial court sustained the Commonwealth's repeated objection.

After the close of the Commonwealth's evidence, appellant moved to strike, arguing that there was no evidence of malice because the firearm could only have originated from Johnson's vehicle. The trial court denied the motion, and appellant presented his evidence.

In addition to testimony of another witness, appellant testified in his own defense. Appellant stated that he and Richardson "never had no problems before" but that he became angry because Richardson was smoking around Q.W. According to appellant, Richardson had been "fidgeting or pulling something out" and when appellant looked into the vehicle, Richardson was pointing a gun at him through the door. Appellant then "snatched the door open," and the men began to struggle over the gun. After appellant removed the gun from Richardson's grasp, he saw Richardson reach for the other side of the car. Appellant testified

- 4 -

that he believed Richardson was reaching for "something else" so he shot Richardson. According to appellant, "next thing you know . . . the door flew open and I shot again. I didn't know it happened too fast. I didn't want to kill nobody."

Contrary to the testimony of other witnesses, appellant stated that he never walked away from the vehicle. Instead, appellant testified that he was frightened, did not know what Richardson was doing, and "[he] just reacted. It won't no time to think. It was just a reaction." Appellant also admitted, however, that he did not see another weapon nor did Richardson verbally threaten him at any point. After the close of all the evidence, appellant renewed his motion to strike, which the trial court denied.

The jury returned a verdict of guilty on the charges of second-degree murder and use of a firearm in the commission of a felony. This appeal followed.

## II. ANALYSIS

### A. Procedural Default

The Commonwealth argues that appellant's first assignment of error—the admissibility of Richardson's prior bad acts to show appellant's reasonable apprehension—should be procedurally defaulted. Specifically, the Commonwealth contends that contrary to appellant's argument on appeal, "the thrust of [appellant's] argument to the trial court was consistently that specific bad acts should come in to show . . . which person was the aggressor."

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Importantly, "[t]he primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (quoting Campbell v. Commonwealth, 12 Va. App. 476, 480,

405 S.E.2d 1, 2 (1991) (*en banc*)). Once this function has been achieved, "the minimum amount of specificity necessary to fulfill the requirements of Rule 5A:18" has been met. Johnson v. Commonwealth, 58 Va. App. 303, 314 n.2, 709 S.E.2d 175, 181 n.2 (2011) (finding that Rule 5A:18 was satisfied where the appellant referenced the issue in his closing argument).

In this case, appellant's assignment of error was sufficiently preserved. Before the trial court, appellant argued that the prior acts were admissible to determine "who the initial aggressor was; . . . [*and*] the reasonable apprehension that [appellant] may have experienced and on the likelihood of the decedent's aggressive behavior." The trial court ruled that the acts were inadmissible "in and of [themselves]" because they were too remote in time, place, and circumstance to show "that [Richardson] was the aggressor and self-defense." Appellant's argument is similar on appeal, contending again that these facts, *in and of themselves*, were admissible to show Richardson's likely behavior and appellant's reasonable apprehension during the altercation. Thus, this Court will consider the merits of his appeal.

B. Merits

On appeal, appellant groups his four assignments of error into two categories: (1) Richardson's prior bad acts, including Johnson's testimony concerning whether Richardson was known to have a gun, were admissible to demonstrate that appellant's apprehensions were reasonable; and (2) the evidence was insufficient to convict appellant of second-degree murder when self-defense was proven and there was no evidence of malice or aforethought. This opinion addresses each in turn.

1. Admissibility of prior bad acts

a. Standard of Review

"Decisions involving the admission of evidence are reviewed on appeal for abuse of discretion." Booker v. Commonwealth, 60 Va. App. 35, 40, 723 S.E.2d 621, 623 (2012).

"[T]he [trial] court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (omission in original) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

### b. Reasonable apprehension of appellant

As a general rule, "[e]vidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Va. R. Evid. 2:404. Under an exception to this rule, however, "[a] criminal defendant may offer evidence regarding the victim's character for violence, turbulence, or aggression for two purposes: (1) to show 'who was the aggressor'[1] or (2) to show 'the reasonable apprehensions of the defendant for his life and safety.'" Canipe v. Commonwealth, 25 Va. App. 629, 640, 491 S.E.2d 747, 752 (1997) (quoting Randolph v. Commonwealth, 190 Va. 256, 265, 56 S.E.2d 226, 230 (1949)). As to the reasonable apprehension of the defendant, "[t]he true solution is to exercise a discretion, and to admit such facts when common sense tells us that they could legitimately affect a defendant's apprehensions." Randolph, 190 Va. at 265, 56 S.E.2d at 230 (quoting 2 Wigmore, Evidence § 248 (3d ed. 1940)).

"A defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined *from the viewpoint of the defendant at the time he acted*." McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978) (emphasis added). "[F]acts . . . not known to the defendant at the time of the shooting . . . could not have affected his state of mind or the circumstances as they reasonably appeared to him at that crucial time." Jones v. Commonwealth, 217 Va. 226, 229, 228 S.E.2d 124, 126 (1976).

---

[1] Appellant concedes that he was the initial aggressor.

In order for Richardson's character for violence to have affected appellant's apprehensions, appellant must have known of this character for violence at the time he acted. Instead, appellant testified that until October 3, 2013, he had not had any problems with Richardson and appellant did not otherwise indicate that he was aware of Richardson's gang affiliation, reputation for possessing a firearm, or other prior bad acts. Without some indication that appellant was aware of Richardson's character for violence, "common sense tells us that [these facts] could [not have] legitimately affect[ed] [appellant's] apprehensions" at the time he shot Richardson. See Randolph, 190 Va. at 265, 56 S.E.2d at 230. Accordingly, the trial court did not err in excluding evidence of Richardson's character for violence offered to prove that appellant had a reasonable apprehension for his life and safety.

## 2. Sufficient evidence of malice

### a. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). This deferential standard requires this Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954).

b. Malice aforethought

The law is well-established in Virginia that proof of malice is required to sustain a murder conviction.

> Criminal homicides in Virginia are classified as follows:
>
>    1. Capital murder,
>    2. First-degree murder,
>    3. Second-degree murder,
>    4. Voluntary manslaughter, and
>    5. Involuntary manslaughter.
>
> Malice, a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished.

Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 219-20 (1984).

> Malice may be either express or implied by conduct. Whether the defendant acted with malice is a question for the trier of fact. "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.' . . . . Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation; . . . ."

Id. at 280, 322 S.E.2d at 220 (emphasis removed) (omissions in original) (quoting Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982)).

"Moreover, 'malice is implied by law from any deliberate, willful, and cruel act against another, *however sudden*.'" Williams v. Commonwealth, 64 Va. App. 240, 251-52, 767 S.E.2d 252, 258 (2015) (emphasis added) (quoting Epperly v. Commonwealth, 224 Va. 214, 231, 294 S.E.2d 882, 892 (1982)). "It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense." Epperly, 224 Va. at 231, 294 S.E.2d at 892 (quoting Smith v. Commonwealth, 220 Va. 696, 700-01, 261 S.E.2d 550, 553 (1980)).

Finally,

> [t]he jury [is] not required to accept the defendant's statement as to how the killing occurred simply because the defendant said it

happened that way and no witnesses testified to the contrary. If from the improbability of his story and his manner of relating it, or from its contradictions within itself, or by the attending facts and circumstances, the jury are convinced that he is not speaking the truth, they may reject his testimony, even though his reputation for truth is not attacked and he is not contradicted by other witnesses.

Randolph, 190 Va. at 263, 56 S.E.2d at 229. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

In this case, the evidence was sufficient to find that appellant acted maliciously. Even if the firearm originated from Richardson as appellant suggests, the fact that appellant shot Richardson two or three times after disarming him, walked twenty to thirty feet away, then turned and shot Richardson four or five more times within a close range, could lead a reasonable fact finder to conclude that appellant's conduct was that of a "sedate, deliberate mind" or at least "a purposeful, cruel act . . . committed . . . without great provocation." See Essex, 228 Va. at 280, 322 S.E.2d at 220 (quoting Pugh, 223 Va. at 668, 292 S.E.2d at 341). Furthermore, the fact finder was entitled to disbelieve appellant's self-serving account of events and was free to believe that appellant's version was designed to conceal his guilt. Accordingly, the trial court did not err in denying appellant's motion to set aside the verdict.

III. CONCLUSION

For the foregoing reasons, this Court affirms appellant's convictions.

Affirmed.