COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Chesapeake, Virginia


WILBUR LEE WALLACE
                                   MEMORANDUM OPINION[*] BY
v.    Record No. 2331-98-1    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                     NOVEMBER 9, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                    AND COUNTY OF JAMES CITY
                  Samuel T. Powell, III, Judge

          John D. Konstantinou (McKenna & Konstantinou,
          P.L.L.C.), for appellant.

          Jeffrey S. Shapiro, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Wilbur Lee Wallace (appellant) was convicted in a bench

trial of three counts of robbery, in violation of Code

§ 18.2-58, and three counts of the use of a firearm in the

commission of robbery, in violation of Code § 18.2-53.1.[1]  On

appeal, he contends the evidence was insufficient to support his

convictions.  Finding no error, we affirm.

---

     [*] Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

     [1] Appellant was also indicted for three counts of abduction,
in violation of Code § 18.2-47.  However, at the conclusion of the
Commonwealth's evidence the trial court granted appellant's motion
to dismiss the abduction charges.

                              I.

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

the prevailing party below, granting to it all reasonable

inferences fairly deducible therefrom.  See Juares v.

Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that on December 15, 1997,

appellant, James Wells, Anthony "Bird" Redcross, Kardell "Rico"

Jones, Carlos "Pork" Mason, Vicent "VJ" Robinson and Charles

Harris spent the afternoon at appellant's apartment.  Wells,

Redcross and Harris played video games in the front room while

appellant, Jones, Mason and Robinson talked in the kitchen.  At

one point during the afternoon, Mason displayed a gun, a Tech 9,

which was described as about "twelve inches long" with "holes in

the barrel" and "a strap around it."  As Redcross and Wells

started to leave the apartment, Mason asked the two, in

appellant's presence, whether they "knew anybody to rob."

Redcross said that he did not, and he left the apartment with

Wells.

     Wells and Redcross then went to the Stonegate Apartments

where Redcross lived.  While at the apartment complex, they

helped Billy Nipper work on his sister's car and went to the

sister's apartment for drinks.  As Wells, Redcross and Nipper

were leaving the apartment, "four or five guys" approached them

from "behind the building and told [them] to get on the ground."

                              -

One of the assailants had a gun, which, according to both Wells and Redcross, looked similar to the Tech 9 they had seen earlier that day at appellant's apartment.

According to Nipper, the assailants "went in my front pockets and stole eighty dollars from me. And kicked me in the ribs." They also took Wells' shoes and jacket, kicked Redcross three times and stripped Redcross of all his clothes. Although the victims were unable to identify their assailants, each testified that the men wore "black clothes" and "ski masks."

At trial, Robinson stated that during the afternoon on December 15, 1997, appellant and Jones were talking about robbing someone that night. Robinson testified to the following:

> Q. Did there come a point in time when there was some discussion about what was going to happen that night?
>
> A. Yea. They were talking about robbing people.
>
> Q. Who was talking about robbing people?
>
> A. Mostly [appellant] and [Jones] were going in the back room talking.
>
>   *    *    *    *    *    *    *
>
> Q. What were they saying about robbing people?
>
> A. They were sticking them up.
>
> Q. Did you see a gun there that day at [appellant's] house?
>
> A. Yea.

-

Q. What kind of gun was it?

A. It was a Tech .9 (sic).

Robinson testified that about an hour after Wells and Redcross left appellant's apartment, the rest of them got into a car and drove off. Mason drove the car, Jones was in the front passenger seat, and Robinson and appellant were in the back seat.

According to Robinson, the four drove to the Stonegate Apartments where Mason, Jones and appellant "started robbing people." Mason "hit" the victims, while Jones and appellant "ran the pockets, patted them down and stuff." Robinson was unable to recall whether the gun was in the car at the time of the robbery. Although Robinson stated that no one wore ski masks over their faces during the robbery, he admitted that appellant, Mason and Jones "usually wear" ski masks on their heads. "[N]ine out of ten times they wear it just to wear it. They wear it everyday." After the incident, Robinson testified, they got back into the car and left the Stonegate Apartments.

At the conclusion of the Commonwealth's evidence, appellant moved to dismiss the charges based on sufficiency grounds. The trial court denied the motion, stating the following:

> I think Mr. Robinson clearly put
> [appellant] at the scene. And the question
> is whether or not, there was a gun involved.
> And Mr. Robinson said apparently there was a
> gun but it was in the car.

-

I don't know if [Robinson] wasn't on the scene as all the actual participants involved in it. It was dark. He doesn't know whether they had the masks on or off or then pulled them down. But he can put the [appellant] there. The victims can certainly tell you there was a gun involved and [the assailants] had masks on.

I overrule your motion at this point in time. It seems to be more a question of credibility of the witnesses. And the trier of fact has an opportunity to weigh the credibility of the witnesses. He is not required to accept the statement in total of any witnesses. He can take or reject any portion of their testimony, as the trier of fact deems appropriate.

In his defense, appellant called numerous alibi witnesses, including many family members, who testified he was babysitting for Cynthia Cowles on December 15, 1997. Appellant's step-sister, Sherri Brown, stated that she was with appellant "the whole day" and "all evening." Additionally, appellant testified that he was with Brown all evening and that he babysat Cowles' children at his apartment. According to appellant, Wells and Redcross returned to his apartment at about 10:30 p.m. and told appellant that they had been robbed by a person named "L.J."

The trial judge accepted the Commonwealth's evidence, and rejected appellant's testimony. The trial court ruled as follows:

This is really a question of credibility of the witnesses and the things about which they testified. The Court has had an opportunity to observe the witnesses and the

-

things about which they testified, their demeanor on the witness stand, and their truthfulness.  And it's certainly one of the cases where the Court has to sift through what was said here.

I will recall Anthony Redcross, . . . [who testified that] he saw a gun at the [appellant's] apartment.  He said that he saw the [appellant] there.  Saw the gun at the house.  And he said the [appellant] said, "Do you know anybody we can rob?"

Vincent Robinson, he was in there at the apartment with [appellant] and [Mason], and they were talking about robbing people. They left, and then shortly later he said they left together.  All of them left together to go rob them.  He said they didn't wear ski masks.  I don't know what that means because clearly they wore ski masks or some type of mask when they got there.

When they got out of the car, they didn't have masks on, and [Robinson] didn't see the gun.  But clearly, when they got there, [Robinson] places these individuals there at the scene.  They're the ones who had been talking about robbing people. They're the ones who had the Tech 9 weapon. It was the same weapon that was used.  I think one of the victims identified it as the same type of weapon they had seen at the apartment earlier.

Taking all these factors into consideration, the Court is satisfied beyond a reasonable doubt that the [appellant] participated in the robbery.

(Emphasis added.)  Accordingly, appellant was convicted of three counts of robbery and three counts of use of a firearm in the commission of robbery.

-

II.

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, and the reasonable inferences fairly deducible from that evidence, support each and every element of the charged offense.  See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). "We will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it."  Reynolds v. Commonwealth, 30 Va. App. 153, 163, 515 S.E.2d 808, 813 (1999) (citing Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

In the instant case, appellant concedes that the victims were robbed at the Stonegate Apartments on December 15, 1997. However, he contends that the Commonwealth's evidence was insufficient to establish that he was a participant in the crime because the victims were unable to identify him.  Appellant argues that the only evidence that places him at the scene of

-

the crime was the testimony of Robinson, which "flies in the face of . . . the three victims."

Appellant's argument is based entirely on the issue of witness credibility.  "The trier of fact is the sole judge of the credibility of the witnesses, unless, as a matter of law, the testimony is inherently incredible."  Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999) (citing Davis v. Commonwealth, 230 Va. 201, 206, 335 S.E.2d 375, 379 (1985); Rogers v. Commonwealth, 183 Va. 190, 201-02, 31 S.E.2d 576, 580 (1944)).  In order for testimony to be found incredible as a matter of law, "it must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ."  Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

In the instant case, the trial court resolved the credibility issues regarding the testimony of Robinson and the three victims against the alibi defense advanced by appellant. Here, Robinson testified unequivocally that on December 15, 1997, he was a passenger in the car with appellant, Jones and

-

Mason when they went to Stonegate Apartments to rob someone. Robinson stated that Mason "hit" the victims, while Jones and appellant "ran" their pockets. Appellant testified to the contrary; however, the trial court was in a position to evaluate the credibility of witnesses, and its decision to accept the testimony of the victims and Robinson and reject appellant's testimony is amply supported by the record. See Cherrix v. Commonwealth, 257 Va. 292, 301-02, 513 S.E.2d 642, 649 (1999), cert. denied, ___ S. Ct. ___ (1999); see also Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) (per curiam) ("[E]ven if the defendant's story was not inherently incredible, the trier of fact need not have believed the explanation.").

Appellant next argues that the evidence was insufficient to establish that he used or possessed a firearm during the commission of the robberies. He contends that because Robinson was unable to recall the location of the gun at the time of the robbery there was no evidence to "place a firearm in [appellant's] possession." However, the trial judge, as the trier of fact, was entitled to reject that part of the evidence believed to be untrue and to accept that found to be true. See Martin v. Commonwealth, 13 Va. App. 524, 528, 414 S.E.2d 401, 403 (1992) (en banc). Accordingly, the trial court did not have to believe the entire testimony of Robinson and instead was

-

entitled to rely upon the testimony of all three victims that a gun was used and displayed during the robbery.[2]

The Commonwealth's evidence was competent, was not inherently incredible and was sufficient to prove beyond a reasonable doubt that appellant was guilty of the offenses charged.  Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>

---

[2] Appellant's argument that the Commonwealth was required to prove that he was in actual possession of a firearm is without merit.  For example, in <u>Cortner v. Commonwealth</u>, 222 Va. 557, 281 S.E.2d 908 (1981), the Supreme Court affirmed a defendant's conviction for use of a firearm in the commission of a felony, even though he did not physically possess the gun, because it was displayed by his codefendant.  <u>See</u> <u>id.</u> at 563, 281 S.E.2d at 911; <u>see</u> <u>also</u> <u>McGill v. Commonwealth</u>, 24 Va. App. 728, 732, 485 S.E.2d 173, 175 (1997).

-