COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued at Salem, Virginia


MARK ALGIE REYNOLDS
                                          OPINION BY
v.    Record No. 1921-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          JUNE 29, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                       G. O. Clemens, Judge

          David D. Walker (A. Kristin Shandor;
          David D. Walker, P.C.), for appellant.

          Daniel J. Munroe, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Mark Algie Reynolds (appellant) was convicted of driving

under the influence of alcohol, second offense, in violation of

Code § 18.2-266, and driving in violation of the terms of a

restricted license, in violation of Code § 18.2-272.  He

contends the trial court erred in admitting the certificate of

breath analysis because the police officer's training did not

comply with statutory mandates.  He also argues the evidence was

insufficient to convict him of driving in violation of the terms

of a restricted operator's license.  For the following reasons,

we affirm.

                         I.  BACKGROUND

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence established that on April 26, 1998, Officer M. S. Woodring of the Roanoke County Police Department was on routine patrol when he observed appellant's vehicle repeatedly cross into the adjacent lane.  After Officer Woodring stopped the vehicle, he observed appellant pass his driver's license as he was looking for it in his wallet.  Appellant had a moderate odor of alcohol about him, and his eyes were "bloodshot, watery, and glassy."  As appellant got out of his car, he leaned against it to keep his balance.  Appellant stated that he had been working at the "Shrimpfest" that day and had consumed two or three beers.

Officer Woodring administered several field sobriety tests, and appellant failed all but one.  Appellant was arrested and taken to the local jail where Officer Woodring administered a breath test on an Intoxilyzer 5000.  The results indicated a blood alcohol content of .14 percent.  Appellant was charged with driving under the influence of alcohol (DUI), second offense.

Officer Woodring also charged appellant with driving in violation of his restricted license.  On July 14, 1997, appellant had been convicted of driving under the influence of alcohol by the United States District Court for the Western

-

District of Virginia.  The court order suspended appellant's license for one year and gave him "a restricted license for the purpose of driving to/from VASAP and to/from work."  At the time of his arrest in the instant case, appellant told Officer Woodring that he was coming from a friend's house.

Appellant filed a pretrial motion to dismiss the DUI charge, arguing that the results of the breath test were inadmissible because Officer Woodring did not meet the statutory training requirements of Code § 18.2-268.9.  Officer Woodring was initially licensed by the Division of Forensic Science (Division) to operate the Breathalyzer 900A.  He obtained this license by attending a forty-hour training class offered by the Division.  In 1995, the Division began replacing the older Breathalyzer 900A with a new model known as the Intoxilyzer 5000.  With the introduction of the new model, each previously licensed operator was required to undergo an additional eight hours of training.  After receiving his additional training, Officer Woodring was issued a new qualifying license for use with the Intoxilyzer 5000.

At a pretrial hearing on appellant's motion to dismiss, Officer Woodring testified that the Intoxilyzer 5000 and the Breathalyzer 900A use different forms and procedures to set up the machines.  The primary difference between the procedures is that only one breath sample is required for the Breathalyzer 900A, whereas at least two samples are required for the

-

Intoxilyzer 5000. Occasionally, a third breath test may be necessary. Although Officer Woodring testified that the two machines operated under different technologies, he noted that the "internal mechanism, the actual analysis of the breath that is in the machine" is controlled internally and the operator has "nothing to do with it."

Dr. Irma B. Adams, technical instructor/coordinator for the Department of Criminal Justice Services, also testified at the pretrial hearing. Although new officers are required to take the forty-hour program, Dr. Adams stated that those operators who had already received an initial forty hours of training and who possessed a valid license were only required by the Division to receive an additional eight hours of training to run the Intoxilyzer 5000. In this case, she confirmed that Officer Woodring completed the initial forty-hour training course on the Breathalyzer 900A and the eight-hour re-certification class on the Intoxilyzer 5000.

In comparing the Breathalyzer 900A and Intoxilyzer 5000 training courses, Dr. Adams stated that much of the material was similar. For example, in both courses the instructors discuss "chemistry and the production of alcohol, the pharmacology of alcohol and how it affects the body; and the relevant portions of the Virginia Code and [case law]." One of the primary differences between the two machines is the number of breath samples required for a valid test. Additionally, the operator

-

is required to blow through the simulator on the Breathalyzer 900A to create a "standard" sample, whereas the Intoxilyzer 5000 performs this function automatically.

The trial court found that Officer Woodring met the forty-hour training requirement under the statute and, therefore, denied appellant's motion to dismiss. At trial, appellant pled not guilty to both charges. Appellant testified that he was employed by the Norfolk and Southern Railroad, but at the time of the stop he was working as a volunteer at the Shrimpfest party. He stated that he consumed four beers that day and thought he was not driving in violation of his restricted license because he was traveling to and from work as a volunteer at the Shrimpfest. However, he admitted on cross-examination that his VASAP caseworker advised him that he could only drive to and from his <u>actual</u> place of work, which did not include volunteer work at the Shrimpfest. At the conclusion of the evidence, the trial court convicted appellant of both charges.

II. TRAINING REQUIREMENTS OF CODE § 18.2-268.9

Appellant contends the trial court erred by allowing into evidence the certificate of breath analysis because Officer Woodring's training failed to comply with Code § 18.2-268.9. He argues that the statute requires the operator to undergo forty hours of training on the specific equipment being used, the

-

Intoxilyzer 5000.  Since Officer Woodring had received only eight hours of training on that particular machine, appellant concludes, the Commonwealth failed to comply with the statute. We disagree.

Code § 18.2-268.9 provides in pertinent part:

> To be capable of being considered valid as evidence in a prosecution under § 18.2-266, § 18.2-266.1, or a similar ordinance, chemical analysis of a person's breath shall be performed by an individual possessing a valid license to conduct such tests, with a type of equipment and in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science.  The Division shall test the accuracy of the breath-testing equipment at least once every six months.
>
> The Division shall establish a training program for all individuals who are to administer the breath tests.  <u>The program shall include at least forty hours of instruction in the operation of the breath-test equipment and the administration of such tests.</u>  Upon a person's successful completion of the training program, the Division may license him to conduct breath-test analyses.

(Emphasis added.)

In the instant case, appellant contends the statute mandates forty hours of training each time a machine is changed or updated.  He argues that although Officer Woodring was certified on the Breathalyzer 900A, the statute requires that he undergo an <u>additional</u> forty hours of instruction on the operation of the Intoxilyzer 5000.

-

"'Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation.'" Sykes v. Commonwealth, 27 Va. App. 77, 80, 497 S.E.2d 511, 512 (1998) (quoting Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992)). "'"Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied."'" Id. at 80-81, 497 S.E.2d at 512-13 (quoting Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944))).

Applying these rules to the instant case, we hold that Code § 18.2-268.9 requires forty hours of training on "breath test equipment" in general and does not mandate the instruction on a particular make or model. The language of the statute refers to forty hours of instruction on "the breath test equipment and the administration of such tests." Code § 18.2-268.9 (emphasis added). Contrary to appellant's interpretation, the statute does not limit the training program to a particular machine; rather, it requires training on "breath test equipment" and the procedures involving the breath tests. If the legislature had intended that operators undergo a forty-hour training program for each individual type of breath test equipment, then it would

-

have said so in the statute.[1]  See Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987) ("If the legislature had intended to include [a broader term], it would have stated so by the use of that term. . . ."); Forst v. Rockingham Poultry Mktg. Coop. Inc., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981).

This interpretation of Code § 18.2-268.9 is fully consistent with the policy and interpretation of the statute by the Division of Forensic Science, which, as the enforcing agency, is entitled to have its interpretation of the statute afforded great deference.  See Commonwealth v. Research Analysis Corp., 214 Va. 161, 163, 198 S.E.2d 622, 624 (1973); Specialty Auto Body v. Cook, 14 Va. App. 327, 330, 416 S.E.2d 233, 235 (1992).  Here, the Division interpreted the statute to mean that, when newer breath test machines are put into service, those operators who have valid licenses are only required to receive an additional eight hours of training.  Furthermore, the

---

[1] On March 21, 1999, the General Assembly approved an amendment, which deleted this provision from Code § 18.2-268.9. Effective July 1, 1999, amended Code § 18.2-268.9 provides in pertinent part:

> The Division shall establish a training program for all individuals who are to administer the breath test.  Upon a person's successful completion of the training program, the Division may license him to conduct breath-analyses.  Such license shall identify the specific types of breath test equipment upon which the individual has successfully completed training.

Acts of Assembly, 1999, C. 273 (emphasis added).

-

Division's policy in requiring only an additional eight hours of supplemental training on the Intoxilyzer 5000 complies with the licensing requirements outlined in the Virginia Administrative Code, which provides the following:

> B.    [L]icenses shall be granted to individuals who demonstrate the ability to perform breath tests accurately and reliably in accordance with the methods approved by the division and who satisfactorily explain the theoretical basis for such chemical analysis.
>
> C.    Only individuals successfully completing a course of instruction of a minimum of 40-hours in breath testing and the administration of such tests shall be deemed to have demonstrated competence to qualify for the issuance of a license.
>
> D.    Licenses shall be limited in scope to those breath test devices on which the individual applying for initial or renewal license has demonstrated competence.  This limitation may be upon the device(s) on which the applicant received instruction in the course referred to in subsection c or in such <u>further instruction as may be necessary to qualify the individual for additional breath test device(s)</u>.

1 Virginia Administrative Code § 30-50-100, at 99-100 (1996) (emphasis added).

In the instant case, we conclude that the trial court properly admitted the certificate of breath analysis.[2]  The

---

[2] The trial court specifically held that Code § 18.2-268.9 requires forty hours of training on the "breath test equipment" in general, stating the following:

> The [statutory] language says, "the breath test equipment."  [Defense counsel] says the

-

evidence established that Officer Woodring successfully

completed "forty hours of instruction in the operation of the

breath-test equipment and the administration of such tests."

Code § 18.2-268.9.  Furthermore, he received an additional eight

---

word "the" is very important . . . and makes
reference to one specific item.  But I don't
think it does that because that sentence,
that language is qualified by the rest of
that sentence, that language is qualified by
the rest of that statute that says that
forty hours can be made up of "the breath
test equipment and the administration of
such tests."  That means that the
legislature is contemplating more than one
type of test, which would contemplate more
than one type of equipment.  And, frankly,
the word "equipment" is a plural word rather
than a singular word and it seems to me like
that the statute has not said that the forty
hours has to pertain to any particular piece
of equipment.

Again, I use very common terms.  Farm
equipment doesn't mean one piece.  It means
plows and tractors, and rakes and so forth.
Baseball equipment doesn't mean just one
type.  It means bats and gloves and masks
and so forth.  Kitchen equipment does not
mean one particular type.  It could mean
pots and pans, and stoves. . . . So I think
. . . the legislature has contemplated this.
So my decision is that the statute does not
say that the forty hours has to be at any
one time.  And it does [say] that the forty
hours can be for the instruction and
administration of the tests. . . . I so rule
the prior training time on the [Breathalyzer
Model] 900A can be a part of the forty hours
that is mandated by the statute and can be
applicable to this . . . Intoxilyzer 5000
Model rather than the 900A model.  So, I do
not find that the motion to dismiss with
regard to the inadequacy of the legal
training is valid.

-

hours of supplemental training on the Intoxilyzer 5000. This "further instruction as may be necessary to qualify the individual for additional breath test device(s)" complies with the licensing requirements provided in 1 Virginia Administrative Code § 30-50-100. Nothing in the Virginia Code or the Administrative Code requires a licensee to take forty hours of training on each breath test device. Because Woodring was properly licensed and qualified, and he followed correct procedures in operating the Intoxilyzer 5000, we affirm the trial court's decision admitting the certificate of analysis into evidence.[3]

### III. SUFFICIENCY OF EVIDENCE

Appellant next contends the evidence was insufficient to prove he operated his vehicle in violation of his restricted operator's license. He argues that the Commonwealth failed to establish the parameters of his restricted license and that he knew his restrictions prohibited him from driving to and from "civic work."

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and

---

[3] Although not addressed on brief, we note that the Supreme Court in Brooks v. City of Newport News, 224 Va. 311, 295 S.E.2d 801 (1982), found the validity of the administrator's license to be a "matter of substance" subject to attack.

-

every element of the charged offense.  See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

On July 14, 1997, appellant was convicted of driving under the influence by the United States District Court for the Western District of Virginia.  The court order suspended appellant's license for one year and gave him "a restricted license for the purpose of driving to/from VASAP and to/from work."  When Officer Woodring stopped appellant on the instant charges, appellant claimed to have been coming from a friend's house.  He also told the officer he had been working at the Shrimpfest, which he testified was "civic work."  He stated that he had consumed four beers while there.

At trial, appellant admitted that his VASAP caseworker advised him that he could drive only to and from his actual place of work.  Moreover, appellant conceded on

-

cross-examination that he knew his "work" did not include going to the Shrimpfest.  The restricted license and order permitted appellant to travel to and from his work and did not permit him to travel to locations to do volunteer "civic work."  The Commonwealth's evidence, including the appellant's own testimony, was competent, was not inherently incredible and was sufficient to prove beyond a reasonable doubt that appellant was driving outside his restrictions.

For the foregoing reasons, appellant's convictions are affirmed.

<u>Affirmed.</u>

-