COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


KEVIN WAYNE KILLINGSWORTH

                                 MEMORANDUM OPINION[*] BY

v.    Record No. 2447-98-3      JUDGE JAMES W. BENTON, JR.
                                   NOVEMBER 9, 1999

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Robert P. Doherty, Jr., Judge

Christopher K. Kowalczuk for appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


    Kevin Wayne Killingsworth was convicted of driving under the influence of alcohol as a subsequent offense. See Code §§ 18.2-266 and 18.2-270. He contends the trial judge erred (1) in denying his motion to suppress, (2) by permitting an officer who lacked the requisite training to testify concerning a breath test, and (3) by denying his motion to strike the evidence. For the reasons that follow we affirm the conviction.

I.

    "In reviewing a trial [judge's] denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the

---

    * Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

Commonwealth, constituted reversible error.'"  McGee v.

Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997)

(en banc) (citation omitted).  The standard for evaluating an

investigatory detention is as follows:

> In order to justify the brief seizure of a
> person by an investigatory stop, a police
> officer need not have probable cause;
> however, he must have "a reasonable
> suspicion, based on objective facts, that
> the [person] is involved in criminal
> activity."  In determining whether a police
> officer had a particularized and objective
> basis for suspecting that the person stopped
> may be involved in criminal activity, a
> court must consider the totality of the
> circumstances.

Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722

(1997) (citations omitted).

Although we are bound to review de novo the ultimate question

of reasonable suspicion, "fact[ual findings] are binding on appeal

unless 'plainly wrong.'"  McGee at 198 n.1, 487 S.E.2d at 261 n.1

(citations omitted).  Moreover, when we review the trial judge's

refusal to suppress evidence, we consider the "evidence adduced at

both the trial and suppression hearing."  Greene v. Commonwealth,

17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994); see also Spivey

v. Commonwealth, 23 Va. App. 715, 721, 479 S.E.2d 543, 546 (1997).

An employee at a Hardees' Restaurant testified that on

November 9, 1997, he saw Kevin Wayne Killingsworth operating a

large Dodge Ram truck on the restaurant's lot.  The truck was in

a service line with other vehicles, and it was "[m]oving back

-

and forth."  Killingsworth was "revving the engine" and moving the truck "like he was almost getting ready to hit the car" in front of him.  The employee telephoned the police and reported the incident.

A police officer testified that he was sent to investigate a driver that "was lunging [his truck] forward at other vehicles and . . . yelling out the window."  The dispatcher gave the officer the description and license plate number of the truck, told the officer "to investigate a drunk driver at that location," and advised the officer that the restaurant's manager had made the complaint.  When the officer arrived at the restaurant, he saw a truck in the service line that matched the description and bore the license plate number he had been given.  The officer approached the passenger side window and asked Killingsworth to leave the service line and park the truck.

After Killingsworth parked the truck, the officer spoke with Killingsworth and detected "a strong odor of alcoholic beverage on his breath . . . and bloodshot eyes."  The officer asked Killingsworth to exit the truck and perform "field tests."  After Killingsworth improperly performed the tests, the officer arrested him for driving under the influence of alcohol.  During the encounter, Killingsworth told the officer he had drunk four beers at a bar.

"Existing case law supports the Commonwealth's contention that when [the officer] stopped [Killingsworth], based on the

-

information he had received and the facts observed, he had a reasonable basis for making a brief investigative stop to determine whether [Killingsworth] was or had been engaged in criminal conduct." Lee v. Commonwealth, 18 Va. App. 235, 240, 443 S.E.2d 180, 182 (1994). As in Lee, the officer detained the accused based on a radio dispatch that a person who was allegedly intoxicated was creating a disturbance at a store. The information concerning Killingsworth came from the store manager, not an anonymous informant. Thus, when the officer arrived and confirmed that the truck was the vehicle involved in the disturbance, the officer "possessed a particularized and objective basis for making an investigatory stop of [the accused's] automobile." Id.; see also Layne v. Commonwealth, 15 Va. App. 23, 24-25, 421 S.E.2d 215, 216 (1992) (upholding a stop based on information from a dispatcher directing the officer to investigate a report from an identified person of an assault and battery). Accordingly, we hold the trial judge did not err in denying Killingsworth's motion to suppress.

II.

Killingsworth contends that the trial judge erroneously admitted the breath test results because the operator was not properly licensed pursuant to the statute. We addressed the requirements of Code § 18.2-268.9 in Reynolds v. Commonwealth, 30 Va. App. 153, 515 S.E.2d 808 (1999). There, we held that an officer who had received forty hours of training on the

-

Breathalyzer 900A machine and an additional eight hours of training on the Intoxilyzer 5000 met the requirements of the statute.  See id. at 160-62, 515 S.E.2d at 811-13.  That holding is dispositive of this issue.

The officer testified that he was licensed to conduct breath alcohol tests on the Intoxilyzer 5000.  He completed forty hours of training on the Breathalyzer 900A machine during a one-week course in 1996; he later completed "an eight-hour course on the Intoxilyzer 5000."  Applying the ruling in Reynolds, we hold that the trial judge did not err in admitting the results of the Intoxilyzer 5000 breath test.

### III.

Killingsworth made a motion to strike the evidence on the ground that no evidence established a time link between the results of the breath test and his driving.  On appeal, he contends the trial judge erred in denying the motion.

During the trial, the judge ruled that "the Commonwealth may not introduce the Certificate of Blood Alcohol Analysis" and also ruled that the Commonwealth was "not entitled to the [statutory] presumptions [of intoxication] normally available to the prosecution."  The judge further ruled, however, that "the Commonwealth may introduce evidence concerning the results of the tests given [Killingsworth] . . . by scientific experts and/or other means."  According to those rulings, the Commonwealth still was required to prove that Killingsworth

-

drove while under the influence of alcohol in violation of Code § 18.2-266(ii).  See Essex v. Commonwealth, 228 Va. 273, 286, 322 S.E.2d 216, 223 (1984) (holding that where a blood alcohol test was not conducted within the statutory framework, the test results could be used as probative evidence of intoxication without a statutory presumption of intoxication).

Killingsworth limits his sufficiency argument to the issue of the timing of the breath test results.  At trial, he did not contest the admissibility of the test results.  Instead, he contends the evidence, which fails to establish the time period between driving and testing, was insufficient to support his conviction.  The officer testified, however, that Killingsworth remained with him continuously from arrest until they reached the police station and that Killingsworth did not drink or eat anything during that time.  Consistent with "the checklist provided . . . by the Division of Forensic Science," the officer observed Killingsworth for twenty minutes after he arrested Killingsworth and before obtaining his breath sample.  Although the officer did not provide the exact time that he gave the breath test, he did indicate that he gave it after Killingsworth's arrest and after Killingsworth appeared before the magistrate and volunteered to take the breath test.  The result of the breath test indicated a blood alcohol content of 0.17 percent by weight by volume.

-

Dr. Irma Adams, who was qualified as an expert in toxicology and pharmacology, opined that a person becomes impaired at a blood alcohol concentration of .05 percent by weight by volume. She further testified that the blood alcohol concentration "shoots up fairly rapidly" while a person is drinking alcohol. She said, "once [the alcohol] is all absorbed, you will reach a peak," and remain at that blood alcohol concentration level for a short while before the level decreases.

The testimony of the officer and Dr. Adams provided a sufficient basis upon which the jury could find beyond a reasonable doubt a link between Killingsworth's alcohol consumption and his driving. The jury had before it, however, much more evidence than the test result. Killingsworth told the officer that he had earlier consumed four beers at a bar. The officer recovered from Killingsworth's truck "two bottles of Budweiser, one wine cooler, [and] six cans of Coors Light." The officer also detected a strong odor of alcohol on Killingsworth's breath and noticed his eyes were bloodshot. During the "finger-to-nose" field sobriety test, Killingsworth was "unsteady on his feet" and could not perform the "heel-to-toe test" as instructed.

The absence of evidence establishing when the test was administered went to the weight of the evidence and was a factor, as was the other evidence, for the jury to consider.

-

> It is well established that the trier of
> fact ascertains a witness' credibility,
> determines the weight to be given to their
> testimony, and has the discretion to accept
> or reject any of the witness'
> testimony. . . . In determining the weight
> to be given the testimony of an expert
> witness, the fact finder may consider the
> basis for the expert's opinion.

Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668-69 (1997) (en banc) (citations omitted).

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Killingsworth was driving under the influence of alcohol. Accordingly, the trial judge did not err in denying Killingsworth's motion to strike.

For these reasons, we affirm the conviction.

Affirmed.

-