COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Annunziata and
        Senior Judge Duff
Argued at Alexandria, Virginia


KEVI COMAS, S/K/A
 KEVI SALVADOR COMAS
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 1216-99-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          JUNE 6, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

            Andrea C. Long (David E. Boone; Boone, Beale,
            Cosby & Long, on brief), for appellant.

            Amy L. Marshall, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Kevi Salvador Comas (appellant) was convicted in a bench

trial of distribution of heroin, in violation of Code § 18.2-248,

and conspiracy to distribute heroin, in violation of Code

§ 18.2-22.[1] The sole issue raised on appeal is whether the

evidence was sufficient to convict appellant of the charges.

Finding the evidence insufficient on both charges, we reverse.

---

     [*] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

     [1] Appellant was also indicted for possession of heroin with
intent to distribute, in violation of Code § 18.2-248.1.
However, the trial court merged the possession charge with the
distribution charge.

I.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence established that on October 15, 1998, Detective Mark Dunn (Dunn) arrested Anthony Williams (Williams) for an outstanding narcotics warrant. Williams agreed to cooperate with the police and work as a confidential informant in the controlled purchase of narcotics from "several Dominican" males. He knew the individuals by their nicknames "Bumler" and "Victor," later identified as Felix Martinez and Daniel Martinez. Williams had no contact with appellant, a 23-year-old taxicab driver from New York, in arranging the controlled purchase.

Under the direction of Dunn, Williams paged two numbers with a New York area code and within five minutes received a return phone call from the Econo Lodge on Midlothian Turnpike in Richmond, Virginia. At that time, Williams arranged to purchase three ounces of heroin, paying $3,800 for one ounce and the other two ounces "were going to be received on consignment." The controlled purchase was going to take place the following day at a yet to be determined location.

Police set up surveillance at the Econo Lodge on October 15, 1998. A "green Windstar van with New York tags" was in the parking lot. Later that night, Detective Dunn saw three Dominican males leave Room 205 and go to a Waffle House restaurant on Midlothian Turnpike. "They stayed at the Waffle House for a short period of time and then they returned and went back into Room 205 at the Econo Lodge." The room was registered in appellant's name.

The following morning, Williams received a page from the Econo Lodge and made arrangements to meet at a bowling alley on Belt Boulevard. At approximately 12:30 p.m., the surveillance units observed all three men exit Room 205, get into the Windstar van, and drive to the bowling alley on Belt Boulevard. Felix Martinez drove the van, Daniel Martinez sat in the front passenger seat, and appellant sat in the rear bench seat. After arriving at the bowling alley, the men waited approximately two minutes, exited the van, and went inside the bowling alley.

After Williams arrived, the Martinez brothers "exited the bowling alley and walked over to the Windstar van." Appellant remained inside the bowling alley. Dunn observed the following:

> After they had hit the buttons to unlock the
> doors Mr. Daniel Martinez walked around to
> the sliding door, which was the door that
> [appellant] had come out, and opened up the
> door and reached in by the bench seat that
> was right directly behind the driver and the
> passenger doors[,] . . . at which time Mr.
> Felix Martinez had opened up the driver's

> side door and he had reached into the vehicle also. And, then they had both turned . . . to [Williams's] vehicle and Danny Martinez had walked over to [Williams's] passenger side window, at which time they had a conversation . . . .

Felix Martinez then exchanged an object, later identified as a bag with an "Oodles of Noodles box" inside, for $3,800 in marked bills. The box contained approximately 54 grams of heroin in two separate bags.

After the sale, the Martinez brothers went back into the bowling alley to meet appellant. Approximately one-half hour later, the surveillance team observed appellant, who was not involved in the parking lot transaction, and the Martinez brothers leave the bowling alley and return to the Econo Lodge. The men walked to a nearby Chinese restaurant, where they were arrested. In a search of the van, the police found under the driver's seat the $3,800 in marked bills. The police also searched the hotel room, where they found "a pair of scissors sitting on the table," five grams of heroin in a latex glove "underneath [a] tissue box," and "a bunch of Oodles of Noodles" inside the garbage can. One of the arresting officers searched appellant and found a wallet containing his identification, approximately $220 in cash, a pager, a cell phone, and an electronic organizer.

At trial, Williams testified that he knew "Bumler" Martinez and "Victor" Martinez from a previous drug transaction.

Williams also stated that he saw appellant "in the car back during the summertime, but [he] never did get no drugs [sic] from [appellant]" and could not remember the type of car. Williams confirmed that appellant was not present in the bowling alley parking lot on October 16, 1998. Williams admitted that he had been convicted of four felonies and that a recent narcotics charge had been nolle prossed on October 17, 1998.

On cross-examination, Detective Dunn testified that appellant did not drive the van at any time while the men were under police surveillance. Dunn was unsure what appellant was doing in the bowling alley during the controlled purchase, but confirmed that appellant was not present in the parking lot. Finally, Dunn admitted that appellant's voice did not appear on any of the telephone calls taped by the police.

In his defense, appellant testified that he met the Martinez brothers in New York at a parking lot owned by his father where appellant attended cars. The brothers knew appellant drove a taxicab and they wanted him to accompany them to Richmond to buy a "Lincoln Town Car" for a taxi business. Appellant was going to drive the car back to New York and lease it from the Martinez brothers on a weekly basis.

Appellant testified that he had never been to Richmond, Virginia prior to the October 15, 1998 trip. When the three men arrived at the Econo Lodge, Felix Martinez handed appellant a

fifty-dollar bill and asked him to go rent a room while they parked the van. Inside, the hotel clerk asked appellant for identification, which appellant produced, and the room was registered in appellant's name.

Appellant testified that he did not know about the drug transaction and, although he saw a bag sitting in the van, he did not know what was in the bag. He admitted that he was present in the hotel room while the Martinez brothers made some phones calls, but he did not overhear their conversations. Appellant stated that the television was on "most of the time" and that the men generally talked about what was on the television and about buying the Lincoln Town Car from an individual named "Miguel."

Appellant testified that on October 16, 1998, the men left the hotel to play pool at a bowling alley. When they arrived, they went inside the bowling alley and appellant rented a table and ordered some food. Although the Martinez brothers went outside for a few moments, appellant remained inside the bowling alley until the three of them left. Appellant testified that the pager, cell phone and electronic organizer belonged to Daniel Martinez and that the police placed all the seized items, including his wallet and cash, into one bag.

On cross-examination, appellant denied ever seeing drugs or the Martinez brothers packaging any drugs. He denied overhearing any telephone conversations about a drug purchase.

At the conclusion of the presentation of evidence, the trial court found appellant guilty of distribution of heroin, in violation of Code § 18.2-248, and conspiracy to distribute heroin, in violation of Code § 18.2-22.

II.

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). "We will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it." Reynolds v. Commonwealth, 30 Va. App. 153, 163, 515 S.E.2d 808, 813 (1999) (citing Martin

v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On appeal, appellant contends that the circumstantial evidence was insufficient to prove that he was a principal in the second degree to distribution of a controlled substance. Although the motel room was in his name, appellant argues that no act, statement, conduct or any other evidence established that "he knew of the presence and character of any heroin or of any heroin deal." We agree.

Proof by circumstantial evidence "'is not sufficient . . . if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture.'" Littlejohn v. Commonwealth, 24 Va. App. 401, 414, 482 S.E.2d 853, 859 (1997) (quoting Hyde v. Commonwealth, 217 Va. 950, 955, 234 S.E.2d 74, 78 (1977)). "'"[A]ll necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence."'" Betancourt v. Commonwealth, 26 Va. App. 363, 373, 494 S.E.2d 873, 878 (1998) (quoting Stover v. Commonwealth, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976))). "When, from the circumstantial evidence, 'it is just as likely, if not more likely,' that a 'reasonable hypothesis of innocence' explains the accused's conduct, the evidence cannot be said to rise to

- 8 -

the level of proof beyond a reasonable doubt." Littlejohn, 24 Va. App. at 414, 482 S.E.2d at 859 (quoting Haywood v. Commonwealth, 20 Va. App. 562, 567-68, 458 S.E.2d 606, 609 (1995)). The Commonwealth need not "exclude every possible theory or surmise," but it must exclude those hypotheses "which flow from the evidence itself." Cantrell v. Commonwealth, 7 Va. App. 269, 289-90, 373 S.E.2d 328, 338-39 (1988) (citations omitted).

Because appellant was never directly involved in the drug transaction in the parking lot at the bowling alley or in setting up the buy, the Commonwealth proceeded on the theory that he was a principal in the second degree. To prove that appellant was a principal in the second degree to distribution of heroin, the Commonwealth had to prove beyond a reasonable doubt that he was present during the offense and aided and abetted or encouraged the Martinez brothers in the crime. See Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991). Furthermore, appellant must have shared the criminal intent of the principals in the first degree. See id.

> Mere presence when a crime is committed is, of course, not sufficient to render one guilty as aider or abettor. There must be something to show that the person present and so charged, in some way procured, or incited, or encouraged, the act done by the actual perpetrator. But whether a person does in fact aid or abet another in the commission of a crime is a question which

- 9 -

> may be determined by circumstances as well
> as by direct evidence. . . .
>
> To constitute one an aider and abettor,
> he must be guilty of some overt act, or he
> must share the criminal intent of the
> principal or party who commits the crime.
> . . .
>
> Notwithstanding these rules as to the
> nonliability of a passive spectator, it is
> certain that proof that a person is present
> at the commission of a crime without
> disapproving or opposing it, is evidence
> from which, in connection with other
> circumstances, it is competent for the jury
> to infer that he assented thereto, lent to
> it his countenance and approval, and was
> thereby aiding and abetting the same.

Foster v. Commonwealth, 179 Va. 96, 99-100, 18 S.E.2d 314, 316 (1942) (citations omitted) (emphasis added).

Even viewed in the light most favorable to the Commonwealth, no evidence established that appellant, as a principal in the second degree, "in some way procured, or incited, or encouraged" or was present when the Martinez brothers distributed the heroin. Id. The van did not belong to appellant, and he was never seen driving the van; he was not present during the actual transaction in the bowling alley parking lot; he was never seen carrying the drugs or receiving or handling either the drugs or money; and his testimony that he knew nothing about the drug transaction was unrebutted. Significantly, appellant does not appear in the video-taped drug exchange in the parking lot, and his voice was not identified as

- 10 -

being in the audio-taped telephone calls. Put simply, there is no evidence linking appellant to the drugs, and any alleged involvement in the transaction was purely speculative. "Suspicion, no matter how strong, is not enough. Convictions cannot rest upon speculation and conjecture." Littlejohn, 24 Va. App. at 415, 482 S.E.2d at 860 (citations omitted).

Nevertheless, the Commonwealth contends that the trial court could reasonably infer appellant's knowledge of the drug transaction because approximately five grams of heroin were found "on the sink in plain view in the motel room." To the contrary, there was no evidence that the drugs were in plain view. Detective Dunn testified that the five grams of heroin were found "underneath the tissue box." (Emphasis added). Additionally, appellant's mere presence in the hotel room or proximity to the drugs is not sufficient to prove that he either possessed or was involved in the distribution of the drugs. See, e.g., Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 872 (1998); Haskins v. Commonwealth, 31 Va. App. 145, 152, 521 S.E.2d 777, 780 (1999). Proof of a mere opportunity to commit an offense provides only "the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction." Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968). The Commonwealth's evidence failed to prove that appellant was either directly

involved in the drug transaction or that he acted as a principal in the second degree.  Finding the evidence insufficient, we reverse the distribution conviction.

Next, appellant contends that the evidence was insufficient to prove that he conspired to distribute heroin.  He argues that "[n]o evidence was presented of any conversation about drugs which [he] is purported to have had with either of the Martinez brothers or Williams."  We agree.

"Conspiracy is defined as an agreement between two or more persons by some concerted action to commit an offense."  Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)) (internal quotations and citation omitted).

> [A] defendant may wittingly aid a criminal act and be liable as an aider and abettor, but not be liable for conspiracy, which requires knowledge of and voluntary participation in an agreement to do an illegal act.  In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.  The agreement is the essence of the conspiracy offense. [T]he Commonwealth must prove beyond a reasonable doubt that an agreement existed.

Id. at 527-28, 375 S.E.2d at 384 (internal quotations and citations omitted).

In the instant case, no evidence was presented that an agreement to distribute heroin existed between appellant and either the Martinez brothers or Williams.  "[E]vidence of a distribution offense absent an agreement will not suffice to support a conspiracy conviction."  Id. at 528, 375 S.E.2d at 385 (citations omitted) (emphasis added).  Here, there was insufficient evidence to prove that appellant either was a principal in the second degree to the distribution charge or was part of a conspiracy to distribute.  For the foregoing reasons, we reverse and dismiss the convictions.

Reversed and dismissed.