COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Retired Judge Overton[*]
Argued at Richmond, Virginia


CLIFFORD ROBINSON, S/K/A
 CLIFFORD ROBINSON, JR.
                                                               OPINION BY
v.      Record No. 1131-05-2            JUDGE JEAN HARRISON CLEMENTS
                                                              AUGUST 22, 2006
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                            William H. Ledbetter, Jr., Judge

            Mark S. Gardner (Muriel-Theresa Pitney; Gardner, Maupin,
            Sutton & Haney, P.C.; Law Office of Muriel Pitney, PLC, on brief),
            for appellant.

            Michael T. Judge, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Clifford Robinson (appellant) was convicted in a bench trial of misdemeanor reckless

driving, in violation of Code § 46.2-852,[1] and felony leaving the scene of an accident, in

violation of Code § 46.2-894.  On appeal, he contends the trial court erred in finding the

evidence sufficient, as a matter of law, to support his convictions.  For the reasons that follow,

we affirm appellant's convictions and remand solely for the purpose of correcting a clerical error

in the sentencing order.

--------

        [*] Judge Overton took part in the consideration of this case prior to the effective date of
his retirement as senior judge on June 30, 2006 and thereafter by designation pursuant to Code
§ 17.1-400(D).

        [1] The final sentencing order improperly references the reckless driving conviction as a
conviction under Code § 46.2-853, rather than Code § 46.2-852.

## I. BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence established that, around noon on June 2, 2004, appellant stopped his Mercedes SUV at a stoplight in the right southbound lane of Gordon Road in Spotsylvania County. While appellant waited for the light to turn green, Christie Antonuccio stopped her red Mustang in the left southbound lane beside appellant's SUV. Antonuccio's four-year-old son was in the backseat of her car in a child safety seat. Appellant's SUV and Antonuccio's car were the first vehicles in their respective southbound lanes. Signs at the intersection indicated that the left southbound lane ended ahead and that the traffic in that lane was to merge into the right southbound lane. The two lanes began to gradually merge into a single lane approximately one tenth of a mile south of the stoplight. The posted legal speed limit for that portion of the southbound roadway, which had a four percent downhill grade, was forty miles per hour. The roadway was dry and free of imperfections in the road surface, and the weather was clear.

When the light turned green, both vehicles quickly accelerated side-by-side toward the merge area. For some time, neither vehicle slowed to allow for the merge. After reaching a speed of approximately 50 miles per hour, appellant eventually slowed down "[a]s they approached the spot where the two lanes merge[d]" into one and allowed Antonuccio to go in front of him. Moments after merging into the lane ahead of appellant, Antonuccio lost control of her car and went off the roadway. Gravel thrown up by Antonuccio's car as it slid across the shoulder of the road pitted the front of appellant's SUV and cracked his windshield. Antonuccio's car then slammed broadside into a tree on the right side of the road. The police

determined the car was traveling approximately seventy-six miles per hour at the time of the impact. The distance from the end of the merge to the impact was one tenth of a mile.

After finding a safe place to stop, appellant proceeded to the accident scene and helped Kenneth Phillips, a local resident who had heard the crash, clear tree limbs from Antonuccio's car in an attempt to extricate its two occupants. A short time later, emergency personnel arrived. Antonuccio's son was pronounced dead at the scene.

Soon thereafter, police officers arrived on the scene. After observing a police officer give another person who had stopped near the accident scene permission to leave the area, appellant left without speaking to any of the law enforcement officers present.

Ninety minutes after the accident, emergency personnel were successfully able to extricate Antonuccio from her car. However, she was pronounced dead on arrival at an area hospital emergency room.

Acting on an anonymous tip received by the police, Deputy Franklin McNeal Fleming contacted appellant the next day, and appellant agreed to speak with him. Upon arriving at appellant's home, Deputy Fleming explained why he was there and notified appellant that there had been two fatalities in the accident. Appellant became "very upset and emotional" and stated that he had not been aware anyone had died. Appellant then told Deputy Fleming about the events surrounding the accident.

Appellant admitted that, even though he knew Antonuccio was accelerating in order to merge into the right lane ahead of him, he continued to accelerate in an attempt to reach the merge area first. Appellant explained that "[h]e was in the proper lane. The red car had to merge" into his lane. Appellant further explained that, "having lived in the area for 17 years, he had seen other cars in the left lane cut off drivers in that right lane" and that, "after 30 years in the Marine Corps, [he] wasn't backing down." Asked specifically why he did not simply slow

down earlier and allow Antonuccio to go ahead of him, rather than try to prevent her from merging in front of him, appellant stated that "he was frustrated about people cutting others off all the time when they tried to merge at that location." Appellant also told Deputy Fleming that he ultimately "back[ed] down," diminishing his rate of acceleration to allow Antonuccio's car to merge into his lane just before the southbound lanes finally merged, because "the red car had too much horsepower for his vehicle, and if he hadn't slowed down he would have crashed." "[H]e knew," appellant explained, that "he couldn't beat the red car." Appellant also stated that he left the scene when he heard an officer gave another driver permission to leave the area because "he did not want any part of what had happened."

Appellant was subsequently charged with reckless driving and felony leaving the scene of an accident. A bench trial commenced on April 13, 2005.

At trial, appellant testified that, when the light turned green, he "inten[ded] to lead in such a way that she could come in behind [him]." "When [he] saw that wasn't happening," he further testified, he "backed down because both lives were endangered . . . the cars would have collided." Appellant also stated that, after doing all he could to assist after the accident, he "backed out of the way" of the emergency personnel and left the scene "the first chance [he] got to leave." On cross-examination, appellant admitted that he accelerated "more briskly" than he would have ordinarily, had there been no car in the left lane, in order to prevent Antonuccio from merging in front of him. Appellant further admitted that, despite knowing Antonuccio "wanted to go in front of [him]," he did not "immediately just slow down and let her by" but continued to "accelerate briskly . . . [w]ithin [the] distance of the merge." By the time he backed down, appellant acknowledged, Antonuccio "was going pretty fast." Appellant also acknowledged that his vehicle was "close behind" Antonuccio's vehicle "when she lost control." He further explained that he left the scene after the accident without speaking to a law enforcement officer

- 4 -

not because he felt guilty for what he had done but because he "wasn't involved in the accident" and "chose not to get [him]self involved." Questioned by the court, appellant explained that he was in tears when informed that both occupants of Antonuccio's car had died "because there [were] deaths" and because he had "tried to assist" after the accident.

In denying appellant's motion to strike and finding appellant guilty of leaving the scene of an accident, the trial court determined that, although appellant was not the cause of Antonuccio's accident, he was "involved" in the accident, as that term is used in Code § 46.2-894. In reaching that decision, the trial court reasoned that "the incident was a continuum from the time the cars left the intersection" until Antonuccio's car "ended up against that tree." The court further reasoned that appellant's "emotional response" to the news that the occupants of the red car had died indicated that appellant knew he was "involved in something that he should be talking to law enforcement about." The court found that, although appellant satisfied the statute's requirement that a driver of a "vehicle involved in an accident" stop and render assistance, he failed to comply with the statute's requirement that the same driver also report his name and information to a law enforcement officer.

The trial court also found appellant guilty of reckless driving, specifically basing the conviction on the uncontested fact that, when appellant saw Antonuccio's car beside him accelerating toward the merge area "at a high rate of speed," his "reaction [was] to accelerate." The court further noted that, although appellant eventually "backed down," by the time he did so "he had already accelerated and engaged in some very foolish conduct," which constituted reckless driving.

The trial court sentenced appellant to two years in prison, all suspended, for the leaving the scene of an accident conviction and six months in jail for the reckless driving conviction. This appeal followed.

## II. ANALYSIS

On appeal, appellant challenges the sufficiency of the evidence to support his convictions. "'When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense.'" Crest v. Commonwealth, 40 Va. App. 165, 174, 578 S.E.2d 88, 92 (2003) (quoting Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999)). "'In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Id. (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)). "'[I]t is our duty to look to that evidence which tends to support the [conviction] and to permit the [conviction] to stand unless plainly wrong.'" Edwards v. Commonwealth, 41 Va. App. 752, 767, 589 S.E.2d 444, 451 (2003) (en banc) (quoting Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961)), aff'd, No. 040019 (Va. Sup. Ct. Order of 10/15/04). Indeed, "'[t]he judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Id. (quoting Reynolds v. Commonwealth, 30 Va. App. 153, 163, 515 S.E.2d 808, 813 (1999)).

### A. Reckless Driving

In challenging the sufficiency of the evidence to support his conviction for reckless driving, appellant contends the Commonwealth failed to prove beyond a reasonable doubt that he had a disregard for the consequences of his acts and an indifference to the safety of life, limb or property. To the contrary, he argues, the evidence showed that, unlike Antonuccio, he "was

- 6 -

conscious of and attempted to protect their safety." He asserts he merely attempted to exercise his right of way and, when he "recognized that Antonuccio would not follow proper traffic rules, he . . . 'back[ed] down' and slowed to allow Antonuccio to enter the right lane." Thus, he concludes, the evidence failed to show he drove recklessly and the trial court erred in finding the evidence sufficient to support a determination of guilt. We disagree.

Code § 46.2-852 states that, "[i]rrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving."

> The word "recklessly" as used in the statute imparts a disregard by the driver of a motor vehicle for the consequences of his act and an indifference to the safety of life, limb or property. Speed alone is not a violation of this statute, but only becomes so when it endangers life, limb or property.
> The essence of the offense of reckless driving lies not in the act of operating a vehicle, but in the manner and circumstances of its operation.

Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 630 (1970) (citation omitted).

In this case, the trial court found that, although appellant did not directly cause Antonuccio's accident, his accelerating to prevent Antonuccio from merging into the right lane ahead of him in the moments before her accident constituted reckless driving. Credible evidence in the record supports this finding, and the finding is not plainly wrong.

The evidence established that, when the traffic light turned green, appellant accelerated faster than he would have had Antonuccio's car not been in the left lane beside him, for no other reason than to keep her from merging into the right lane ahead of him. Having lived in the area for many years and "frustrated about people cutting others off all the time when they tried to merge at that location," appellant continued to "accelerate briskly" and drive alongside Antonuccio, despite knowing that Antonuccio wanted and intended to merge in front of him. Unwilling to fall behind Antonuccio, appellant continued to accelerate "[w]ithin [the] distance of

- 7 -

the merge," reaching speeds in excess of the speed limit. Only upon realizing as he approached the end of the merge that "he couldn't beat the red car" did he "back down" and let Antonuccio go ahead of him. By then, Antonuccio's car "was going pretty fast."

From this evidence, the trial court could reasonably conclude that, in continuing to accelerate through the merge area at a high speed despite knowing Antonuccio intended to merge in front of him, appellant drove with disregard for the consequences of his actions and an indifference to the safety of life, limb, or property. Appellant's familiarity with the road and his awareness that drivers in the left lane often cut off drivers in the right lane at the merge further support the finding that appellant was fully aware of the potential danger and, for the relevant period of time, disregarded it.

Appellant argues his conduct was not reckless because, "[al]though he initially set out to maintain his right of way, he [eventually] recognized the potential for a dangerous situation and he acted in a manner to prevent a collision." In making such an argument, appellant seems to suggest that his conduct cannot constitute reckless driving because he avoided a collision. However, the reckless conduct for which appellant was convicted occurred not when he recognized and avoided the dangerous situation, but earlier when he helped create that situation. The fact that appellant ultimately considered the consequences of his actions and avoided a collision does not negate the fact that he was indifferent to the consequences of his actions moments before when he was accelerating to prevent Antonuccio from merging in front of him. The commission of the crime of reckless driving was complete at that point, and the cessation of the offending conduct did not purge appellant's culpability.

Appellant also argues that, unlike Antonuccio's driving, his driving was not reckless because he "had the right of way and had the right to expect that Antonuccio would merge into the right lane behind him." In support of this argument, appellant cites the Supreme Court's

holding in <u>Harris Motor Lines, Inc. v. Green</u>, 184 Va. 984, 992, 37 S.E.2d 4, 6 (1946), that "[a] person has the right to assume that everyone else will obey the law and perform his duty and to act upon that belief until the contrary appears." Thus, he argues, he may not be held criminally liable under <u>Harris Motor Lines</u> for assuming, as he continued to accelerate toward the merge with Antonuccio by his side, that Antonuccio would yield the right of way to him and properly merge behind him.

This argument is without merit. Even were we to assume *arguendo* that appellant's reliance on <u>Harris Motor Lines</u>, a case involving civil negligence rather than criminal recklessness,[2] is not misplaced, <u>see generally</u> <u>Morris v. Dame's Ex'r</u>, 161 Va. 545, 569, 171 S.E. 662, 671 (1933) (noting that the term "reckless driving" as it appears in the criminal statute "is not used with reference to the law of torts"), appellant's own admissions belie his implicit claim that he expected Antonuccio to dutifully merge behind him. Indeed, appellant admitted the day after the accident and again at trial that he continued to accelerate in an attempt to reach the end of the merge first, even though he knew Antonuccio was accelerating in order to merge into the right lane ahead of him. Such knowledge renders appellant's argument and his reliance on <u>Harris Motor Lines</u> irrelevant.

We hold, therefore, that the evidence presented at trial was sufficient, as a matter of law, to sustain appellant's conviction for reckless driving.

### B. Failure to Report to a Law Enforcement Officer

In challenging the sufficiency of the evidence to support his conviction for feloniously leaving the scene of an accident without reporting his identifying information to a law enforcement officer, in violation of Code § 46.2-894, appellant contends the Commonwealth

---

[2] <u>Harris Motor Lines</u> involved the application of the "last clear chance" doctrine in a tort action for negligence where both parties were "guilty of continuous acts of negligence down to the time of the accident." <u>Id.</u> at 991, 37 S.E.2d at 6.

failed to prove beyond a reasonable doubt that he was "involved" in Antonuccio's accident and thus subject to the statute's mandate. Thus, he concludes, the trial court erred in finding the evidence sufficient to support a determination of guilt. We disagree.

In pertinent part, Code § 46.2-894 provides as follows:

> The driver of any vehicle *involved* in an accident in which a person is killed or injured or in which an attended vehicle . . . is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic . . . and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency . . . .

> \* \* \* \* \* \* \*

> Any person convicted of a violation of this section is guilty of . . . a Class 5 felony if the accident results in injury to or the death of any person, or if the accident results in more than $1000 of damage to property . . . .

(Emphasis added.) Thus, a conviction under Code § 46.2-894 requires proof beyond a reasonable doubt that the defendant was "involved" in the accident whose scene he is charged with leaving.

Appellant concedes, on appeal, that he left the scene of Antonuccio's accident without reporting his identifying information to a law enforcement officer. He contends, however, that he was not legally required to so report because, as the trial court found, he did not cause the accident. Thus, appellant argues, he was not "involved" in the accident within the meaning of Code § 46.2-894. He was, he claims, nothing more than a witness who had no part in the accident. Accordingly, he concludes, he had no obligation to report to a law enforcement officer at the scene of the accident under Code § 46.2-894 and, thus, may not be held criminally liable for failing to do so.

The Commonwealth contends that, although appellant may not have legally caused the accident, the record makes it absolutely clear that he was "involved" in it, given the plain

meaning of that term. Appellant's actions, the Commonwealth asserts, had an effect on Antonuccio's actions and their combined conduct led to the accident.

At issue, therefore, is whether appellant was "involved" in Antonuccio's accident within the contemplation of Code § 46.2-894. "Because this is a question of law involving statutory interpretation, we review the trial court's judgment *de novo*." Schwartz v. Commonwealth, 45 Va. App. 407, 424, 611 S.E.2d 631, 640 (2005) (citing Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) ("Although the trial court's findings of historical fact are binding on appeal unless plainly wrong, we review the trial court's statutory interpretations and legal conclusions *de novo*.")).

"It is well established that, 'when, as here, a statute contains no express definition of a term, [we] infer the legislature's intent from the plain meaning of the language used,' in light of the context in which the term at issue is used." Id. at 425, 611 S.E.2d at 640 (quoting Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998)); see also Sansom v. Bd. of Supervisors, 257 Va. 589, 594-95, 514 S.E.2d 345, 349 (1999) ("An undefined term must be 'given its ordinary meaning, given the context in which it is used.'" (quoting Dep't of Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980))). "Involve" is defined, in pertinent part, as "to draw in as a participant," to "implicate," "to relate closely," to "connect," "to have an effect on," to "concern directly," to "affect." Webster's Third New International Dictionary 1191 (1993). Nothing in these definitions suggests that, for purposes of determining criminal liability under Code § 46.2-894, a driver must have legally caused an accident in order to be considered "involved" in the accident. Indeed, the various definitions make it clear, given the breadth of their scope, that a driver need only be "implicated in or connected with the accident in a substantial or logical manner" to be "involved" in an accident under the statute. People v. Oliver, 617 N.W.2d 721, 724 (Mich. Ct. App. 2000)

- 11 -

(holding that the defendant was "involved" in an accident when he used his vehicle to push an inoperative car being steered by someone else that then swerved into the path of another car); see also People v. Sell, 215 P.2d 771, 772 (Cal. Ct. App. 1950) (holding that a defendant is "involved" in an accident if his conduct was "connected with [the] accident[] in a natural or logical manner" and that the defendant was "involved" in an accident when she changed lanes and caused the car next to her to swerve into the path of another car); People v. Kerger, 548 N.E.2d 36, 39 (Ill. App. Ct. 1989) (holding that "involved" means "implicated in an accident or connected with the accident in a substantial manner" and that the defendant was "involved" in an accident when she swerved to miss a pedestrian who was then struck by the vehicle behind the defendant).

We hold, therefore, that the application of the statute is not exclusively limited to those drivers who legally cause an accident. Accordingly, a conviction under Code § 46.2-894 does not require proof that the defendant legally caused the accident. See Sell, 215 P.2d at 772 ("The [failure to stop after an accident] statute . . . is in no way made dependent upon . . . who may ultimately be found to have been . . . at fault."); Kerger, 548 N.E.2d at 39 ("[I]t is not necessary to determine, for purposes of deciding whether defendant was involved in a motor vehicle accident, whether defendant caused or was at fault for the accident . . . ."); Oliver, 617 N.W.2d at 724 (noting that the defendant's "acquittal of [involuntary manslaughter and negligent operation of a vehicle causing homicide] charges is not inconsistent with a finding that he was involved in the accident for the purposes of [the failure to stop after an accident statute]"). Thus, we reject appellant's claim that he was not "involved" in the subject accident because the trial court found he did not cause it.

The question remains, however, whether the evidence presented at trial was sufficient, as a matter of law, to prove beyond a reasonable doubt that appellant was "involved" in the subject

accident. The evidence established that, when the traffic light turned green, appellant and Antonuccio both drove from the intersection determined to be first through the merge. Resolute in his desire to prevent Antonuccio from cutting him off, appellant continued to accelerate despite knowing that Antonuccio was trying to pass him. Reaching a speed of approximately 50 miles per hour, appellant kept pace with Antonuccio as they neared the end of the merge. Moments before the merge ended, appellant "backed down" and let Antonuccio merge in front of him. By then, Antonuccio's car "was going pretty fast" on the downhill road. Almost immediately after merging, Antonuccio lost control of her car, left the road, and crashed into a tree.

This evidence plainly shows that, regardless of whether he actually caused the accident, appellant had a substantial part in Antonuccio's accident. It is clear from the evidence that Antonuccio's high speed after completing the merge led to her losing control of her vehicle. It is also clear that appellant's conduct in accelerating through the merge area, despite knowing that Antonuccio was trying to pass and merge into his lane in front of him, contributed in a substantial way to Antonuccio's high speed. Plainly, had appellant stopped accelerating and allowed Antonuccio to pass him when he first became aware that she intended to merge in front of him, Antonuccio's speed would not have been as high following the merge and the accident may have been avoided. We conclude, therefore, that, as a participant in the uninterrupted chain of events that logically culminated in Antonuccio's accident, appellant was implicated in or connected with the accident in a substantial or logical manner and was thus "involved" in the accident within the contemplation of Code § 46.2-894. Accordingly, he was required to stop at the scene of the accident and report his identifying information to a law enforcement officer. Although he stopped and rendered aid at the scene of the accident, appellant failed to report to an officer.

We hold, therefore, that the evidence presented at trial was sufficient, as a matter of law, to sustain appellant's conviction for feloniously leaving the scene of an accident without reporting his identifying information to a law enforcement officer.

### III.  CONCLUSION

For these reasons, we hold the trial court did not err in finding the evidence sufficient, as a matter of law, to support appellant's convictions.  We therefore affirm the trial court's judgment and appellant's convictions and remand to the trial court to correct the code reference in the sentencing order for the conviction of reckless driving.

<u>Affirmed and remanded.</u>